1999 OK 94

STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Daniel DORIS, Respondent.

SCBD No. 4400.

Supreme Court of Oklahoma.

Dec. 7, 1999.

As Corrected Dec. 20, 1999.

---

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma for Complainant.

No appearance by Respondent.

LAVENDER, J.

¶ 1 Complainant, the Oklahoma Bar Association brought disciplinary proceedings against respondent, Daniel Doris, under Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991, Ch. 1, App. 1–A, as amended. A Professional Responsibility Tribunal trial panel found violations of the RGDP and the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991, Ch. 1, App. 3–A, as amended, and recommends disbarment. After *de novo* review, we find respondent guilty of numerous acts of misconduct and the appropriate discipline is disbarment. We also hold respondent should pay the costs of these proceedings.[1]

## PART I. STANDARD OF REVIEW.

¶ 2 The standard of review in attorney disciplinary proceedings is as follows:

In attorney disciplinary proceedings this Court's determinations are made *de novo*.

The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and [its] recommendations ... are merely advisory. (citations omitted)

*State ex rel. Oklahoma Bar Ass'n v. Todd,* 1992 OK 81, 833 P.2d 260, 262.[2]

¶ 3 The *de novo* review standard involves a full-scale exploration of all relevant facts. *State ex rel. Oklahoma Bar Ass'n v. Carpenter,* 1993 OK 86, 863 P.2d 1123, 1128. As such, it requires a complete record be made before the trial panel—a record sufficient for an examination of all pertinent issues, a thorough inquiry into all essential facts, and the crafting of appropriate discipline. *Id.* at 1128–1129. The record presented is adequate for the required *de novo* review.

## PART II. FACTS AND PROCEDURAL BACKGROUND.

¶ 4 At the time of the trial panel hearing in June 1999 respondent was an attorney licensed to practice law in Oklahoma and he was subject to this Court's jurisdiction. Five counts of misconduct were lodged: counts I–II by complaint filed in November 1998; counts III–IV by amended complaint filed in December 1998; and count V by second amended complaint filed in March 1999. Discipline enhancement was sought because in May 1995 respondent was privately reprimanded by the Professional Responsibility Commission for misconduct arising out of his failure to appear at a scheduled court hearing. The record shows the complaint, amended complaint and second amended

---

1. Rule 6.16 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991, Ch. 1, App. 1–A, provides that where discipline is imposed, the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court. No good cause for remission has been shown.

2. To warrant a finding of misconduct against a lawyer in a contested case, the charge(s) alleged must be established by clear and convincing evidence. Rule 6.12(c), RGDP, 5 O.S.1991, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Thomas,* 1995 OK 145, 911 P.2d 907, 909.

complaint were furnished to and received by respondent.

¶ 5 Respondent filed a response to the complaint in December 1998. It stipulated to the allegations of count I, admitted some allegations of count II, claimed insufficient information to either admit or deny other allegations of count II, and denied other allegations of that count. No formal written answer or response was filed to the amended or second amended complaints, which both re-adopted and re-alleged counts I–II of the complaint.

¶ 6 The record includes the transcript of the June 1999 trial panel hearing, at which eight witnesses testified and over 130 exhibits were admitted.[3] It also includes the pleadings, trial panel orders filed, and the panel's written report and a correction thereto. As will be seen, respondent was partly uncooperative during the investigative stage of this matter and, even though he had adequate notice of the June hearing, he failed to attend it. The record also shows that on the morning of the hearing the panel's presiding master tried to contact respondent by telephone at his then current residence (apparently his sister's home) and was informed (apparently by his sister) that he was at work at K–Mart.

¶ 7 Respondent also failed to submit a response brief to complainant's brief filed in this Court in July 1999. He further has a history of alcohol-related problems, which we find, he failed to fully recognize or control, even after three convictions (two misdemeanors and a felony) for driving under the influence of alcohol, four other arrests for alcohol-related offenses while in control of a motor vehicle, and even after the present charges had been initiated.

¶ 8 An investigator for complainant that handled much of the investigation in regard to this matter also testified at the June 1999 hearing that respondent told him at some point during the investigation that he, respondent, no longer wanted to practice law and he no longer had an interest in it. Respondent also told the investigator, however, he was not going to resign from membership in the Oklahoma Bar Association because he did not want his name to appear in the Oklahoma Bar Journal as having resigned— that if complainant wanted his license to practice law, complainant was going to have to take it.

¶ 9 Prior to the trial panel hearing, complainant filed a motion to deem all allegations of the complaint, and the amended and second amended complaints admitted, or alternatively, to deem the allegations in the latter two pleadings admitted by respondent. Respondent did not respond to the motion. The motion's basis was that respondent had failed to answer or respond to the amended or second amended complaints and, although he did submit a formal written response to the complaint, it was filed out of time without his seeking permission to so submit it. The motion was anchored on Rule 6.4, RGDP, 5 O.S.1991, Ch. 1, App. 1–A, which provides:

> The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

The trial panel sustained the motion, ruling all allegations of the complaint, amended and second amended complaints to be deemed admitted by respondent.

¶ 10 In that respondent's December 1998 response stipulated to count I's allegations, and most of the substantial allegations of counts I–II were proved by clear and convincing evidence in any event, we need not decide the propriety of sustaining the motion in regard to the complaint. Plainly, however, it was properly granted as to counts III–V because respondent did not submit a formal response to the amended or second amended complaints. *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 1996 OK 27, 912 P.2d 856,

---

**3.** The exhibits admitted on behalf of complainant, the Oklahoma Bar Association, were numbered 2 through 92. However, some contained more than one document with subpart numbering (e.g. 2A, 2B, etc.), so that actually over 130 exhibits were admitted.

860. Finally, even as to counts III–V, the proof at the hearing showed multiple instances of misconduct, including misappropriation or theft of client funds by conversion (count V), misconduct warranting disbarment.

¶ 11 Summarized, the record in this matter shows respondent in violation of the following: Rules 1.3 (acts contrary to prescribed standards of conduct)[4]; 1.4 (trust account dereliction, mishandling of client funds and intentional misappropriation of client funds)[5]; and 5.2 (non-responsiveness in disciplinary process)[6] of the RGDP. He also violated the following provisions of the ORPC: Rules 1.1 (failing to provide competent representation to a client)[7]; 1.3 (failure to act with reasonable diligence and promptness in representing a client)[8]; 1.4 (client-communication

4. Rule 1.3, RGDP, 5 O.S.1991, Ch. 1, App. 1–A, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

5. Rule 1.4, RGDP, 5 O.S. Supp.1992, Ch. 1, App. 1–A, provides:

(a) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such inquiry shall remain confidential unless a grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account. Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline.

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.

(d) Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded is extortionate or fraudulent.

6. Rule 5.2, RGDP, 5 O.S.1991, Ch. 1, App. 1–A, provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

7. Rule 1.1, Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991, Ch. 1, App. 3–A, provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

8. Rule 1.3, ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

lapses) [9]; 1.15 (mishandling and record-keeping lapses in regard to client funds) [10]; 3.2 (failure to make reasonable efforts to expedite litigation) [11]; 3.5(d) (engaging in conduct intended to disrupt a tribunal) [12]; 4.4 (engaging in conduct, while representing a client, having no substantial purpose, except to delay or burden a third person) [13]; 8.1(b) (in

**9.** Rule 1.4, ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**10.** Rule 1.15, ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

(d) Trust Accounts. A lawyer or law firm may create and maintain an interest-bearing demand trust account and may deposit therein all funds of clients to the extent permitted by applicable banking laws, that are nominal in amount or are on deposit for a short period of time. Maintenance of such trust account balances in noninterest-bearing trust accounts will still be permitted. The attorney electing to utilize interest-bearing trust accounts shall comply with the following provisions:

(1) the Interest–Bearing Demand Trust Account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation;

(2) the rate of interest payable on any interest-bearing demand trust account shall be not less than the rate paid by the depository institution to regular, nonattorney depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;

(3) the depository institution shall be directed:

(A) to remit interest or dividends, as the case may be, on the average monthly balance in the account, at least quarterly, to the Oklahoma Bar Foundation, Inc.; and

(B) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or the law firm for whom the remittance is sent and rate of interest applied; and

(4) in the event that any client asserts a claim against an attorney based upon such attorney's determination to place client advances in the Interest–Bearing Demand Trust Account because such balance is nominal in amount or held for a short period of time, the Foundation shall, upon written request by such attorney, review such claim and either:

(A) approve such claim (if such balances are found not to be nominal in amount or short in duration) and remit directly to the claimant any sum of interest remitted to the Foundation on account of such funds; or

(B) reject such a claim (if such balances are found to be nominal in amount or short in duration) and advise the claimant in writing of the grounds therefor. In the event of any subsequent litigation involving such a claim, the Foundation shall interplead any such sum of interest and shall assume the defense of the action.

**11.** Rule 3.2, ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

**12.** Rule 3.5(d), ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

A lawyer shall not: . . .
(d) engage in conduct intended to disrupt a tribunal.

**13.** Rule 4.4, ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides:

connection with a disciplinary matter, failing to disclose a fact necessary to correct a misapprehension known to have arisen in the matter or knowing failure to properly respond to disciplinary authority demand for information) [14]; 8.4(a) (violating or attempting to violate the ORPC); 8.4(b) (commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (conduct prejudicial to the administration of justice).[15]

## PART II(A). COMPLAINT—COUNT I.

¶ 12 Count I concerns respondent's representation of David Herndon in a forged instrument/check dispute with the Bank of Oklahoma (BOK). In December 1996 he filed suit against BOK in Tulsa County on Herndon's behalf in relation to the dispute. Thereafter, he called Herndon with a BOK settlement offer of $1,500.00, which Herndon agreed to accept. A dismissal with prejudice, signed by respondent, was filed in the case in April 1997. Around this same time period respondent told Herndon, "it could be awhile" before Herndon got paid.

¶ 13 Although there is no direct evidence respondent received the settlement check from BOK in April 1997, the circumstantial evidence, primarily the filing of the dismissal with prejudice, leads to the conclusion a check in such amount was received by him on Herndon's behalf about such time. Further, respondent stated to an investigator for complainant that he cashed the settlement check and kept the proceeds for a lengthy period of time in his desk, although the record does not show exactly when the check was cashed by respondent.

¶ 14 The record also shows respondent did not maintain a trust account for client funds during the relevant time period and that Herndon was not paid the $1,500.00 until June 1998, i.e. over a year after the dismissal with prejudice was filed and only after Herndon filed a grievance against respondent with the Tulsa County Bar Association in January 1998, which in March 1998 was referred to complainant. In addition to the above, before bringing a grievance, Herndon repeatedly tried to contact respondent by telephone, mail and in person concerning the settlement money, but respondent did not return Herndon's calls or answer his letters.

¶ 15 On May 7, 1998 complainant sent respondent a letter notifying him of Herndon's grievance and advising he had twenty days to respond under Rule 5.2, RGDP. A letter from respondent was received by complainant on May 27, 1998 that was not fully and fairly responsive to Herndon's grievance. In the letter he stated in part: "I have his money. My question to you is whether I should send it to him or to you." Both by telephone message and by letter dated May 29 complainant essentially advised respondent to direct any payment to Herndon. As of June 10, 1998 complainant was advised that respondent had not contacted Herndon.

¶ 16 On June 11 complainant sent respondent a certified letter to his Oklahoma Bar Association roster address requesting he contact complainant within five days pursuant to Rule 5.2, RGDP. Respondent failed to re-

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

14. Rule 8.1(b), ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provides in relevant part:

[A] lawyer ... in connection with a disciplinary matter, shall not: ...

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

15. Rule 8.4(a)-(d), ORPC, 5 O.S.1991, Ch. 1, App. 3–A, provide:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

spond to the June 11 letter and, consequently, a subpoena was issued commanding him to appear on June 24 at the Oklahoma Bar Center in Oklahoma City for his deposition and to produce any bank records, etc. concerning the $1,500.00 settlement. The subpoena was personally served on respondent June 19. That same day he finally paid Herndon $1,500.00 by cashier's check, which showed respondent as the remitter.

¶17 A few days later complainant sent respondent another copy of Herndon's grievance and a letter informing him that Herndon's payment would not dispose of the matter and again informed him, he was to provide a full and fair response to the grievance. Further, in that it had come to light during the investigation that respondent had lost his driver's license, complainant, in the same letter, requested he detail the circumstances concerning loss of his driver's license.

¶18 Contact was had between respondent and complainant concerning his deposition and, by agreement, the deposition was reset for July 1, 1998 at the Tulsa County Bar Association. It was also agreed that if he provided an adequate written response to the grievance by June 25, the deposition would be canceled. Respondent did not provide a written response by the agreed date. On June 29, by fax, complainant advised respondent of the date, time and location of his deposition in Tulsa. Respondent's secretary confirmed receipt of the fax and left a message for him to call complainant. Respondent did not appear for his July 1 deposition and he failed, prior to the deposition, to inform complainant he would not appear.

¶19 On July 6 respondent sent complainant a fax advising he was sick the week of his scheduled deposition and he offered to reschedule it. The deposition was reset by agreement, but before the agreed date respondent contacted complainant advising he would be unable to appear (basically due to lack of transportation) and requesting the deposition again be rescheduled.

¶20 In a letter dated June 25, 1998 from respondent to complainant, **but not received by complainant until July 7 and not postmarked until July 6,** respondent indicated he had been experiencing personal problems and he had been out of his office for several days at a time for several months. The letter also admitted he had not timely notified Herndon about the settlement funds, and he had failed to comply with Rule 1.15, ORPC, because he did not keep written books or records concerning client money he may have received in his professional capacity. The letter further stated his driver's license was suspended in July 1997, he had not driven since May 1997 and he was working with another attorney in Alcoholics Anonymous, apparently concerning a drinking problem.

¶21 Although the record is not completely clear as to the exact details concerning the loss of respondent's driver's license, the fact is respondent had no valid driver's license in May 1997. In fact, the record shows respondent has, at least, two convictions for driving a motor vehicle while he had no valid driver's license, one in May 1997 and one in January 1998. It also shows he has three convictions (two misdemeanors and a felony) for driving while under the influence of alcohol. See **PART II(C), AMENDED COMPLAINT— COUNT III,** *infra.*

¶22 The record also shows respondent told an investigator for complainant, in his view, his problem with Herndon was one of "neglect". He also told the investigator receiving a subpoena had nothing to do with him paying Herndon and again, in his view, he had adequately responded to the Herndon grievance.

¶23 In its June 25, 1999 written report the trial panel also found that on his 1998 annual dues statement respondent falsely checked the box indicating he did not receive or disburse client funds and, therefore, did not maintain a trust account. Rule 1.4(a), RGDP requires Oklahoma attorneys to file an annual certificate concerning their trust account(s) or, instead, to execute a form indicating they do not maintain such account(s) and the reason(s) why they do not, i.e. that they do not receive or disburse client funds. Respondent's 1998 annual trust account certificate was signed by him in November 1997. As is obvious from the record in this case,

respondent's November 1997 annual certificate denying he received or disbursed client funds was false given the fact the record shows he was in possession of Herndon's funds at the time he executed the certificate and the funds were finally disbursed to Herndon in June 1998.

## PART II(B). COMPLAINT—COUNT II.

¶ 24 This count concerns respondent's representation of Daniel Wafford in a divorce case from June 1997 to April 1998. A trial date was set for February 9, 1998 at a pretrial conference that respondent attended. Respondent did not appear on February 9 and he failed, prior to that date, to inform the assigned judge, his client or opposing counsel he would not appear. He later admitted to Wafford he had been intoxicated on February 9.

¶ 25 After discussing the situation with a potential new attorney and with respondent, Wafford agreed to respondent's continued representation and the case was reset for trial on March 2. Thereafter, respondent failed to keep an appointment with Wafford for trial preparation, without advising Wafford he would not be able to keep the appointment. He also admitted to opposing counsel during this time period he suffered from depression and he "self-medicated" himself with alcohol.

¶ 26 On March 2 and 3 respondent did appear for trial. On one or both days he was either in an intoxicated state or in a state in which he was "hung-over" from the recent use of alcohol. The evidence also showed he was, in part, unprepared to conduct the trial on his client's behalf in a reasonably competent manner. After Wafford initiated a grievance against him with complainant, respondent was mailed a copy of the grievance and asked to respond. Although it is questionable whether the response was a full and fair response to all the allegations made against him, respondent did respond to the Wafford grievance in a timely manner.

## PART II(C). AMENDED COMPLAINT— COUNT III.

¶ 27 The charges of this count are deemed admitted by respondent by virtue of his failure to file a formal written answer or response to the amended complaint. The substance of count III concerns respondent's two misdemeanor convictions for driving while under the influence of intoxicating liquor and a felony conviction for the same offense. All occurred in Tulsa County. The first misdemeanor conviction was in October 1993 for an offense occurring in September 1993. The second was in May 1997 for an offense occurring in December 1996. The felony conviction was for an occurrence happening **later the same day** that respondent had been sentenced for the second misdemeanor conviction in May 1997. He was sentenced on the felony conviction, to which he plead guilty, in January 1998. The record also shows respondent has, at least, two convictions for driving a motor vehicle while he had no valid driver's license, one in May 1997 and one in January 1998.

¶ 28 Less than a month after the felony conviction, as seen by reviewing our discussion of count II above, respondent failed to appear at trial in the Wafford divorce case in February 1998 because he was intoxicated on alcohol. In addition to his convictions, the record further shows respondent has a prior history of arrests for alcohol-related offenses and use of a motor vehicle—in 1985, 1986, 1989 and in 1992.

¶ 29 Although respondent did respond to a grievance initiated by complainant concerning his felony driving under the influence conviction, the response was untimely, and as we read it, evidences respondent's view that his alcohol-related driving problems do not reflect on his fitness to practice law. The record further reveals that, as late as November 1998, respondent had not come to grips with his alcohol problem, as the record shows he was intoxicated in the middle of the afternoon on November 5, 1998 and the middle of the morning on November 24. These dates and times were two of the times he was served with subpoenas for his deposition(s) in relation to this disciplinary proceeding. The process server that personally served these notices was a witness at the June 1999 trial panel hearing and he testified, in essence, respondent was obviously intoxicated on alcohol at said times. The record also shows

that respondent failed to show up for his own deposition in regard to this count, even though he was adequately noticed by subpoena for the deposition.

## PART II(D). AMENDED COMPLAINT—COUNT IV.

¶ 30 The charges in this count are deemed admitted by respondent because of his failure to file a formal written answer or response to the amended complaint.[16] Count IV involves respondent's representation of a Ruth Kelley in a divorce-related proceeding in Tulsa County. Margaret Lowery represented Timothy Kelley in the matter. Respondent failed to appear at a scheduled hearing in the matter on August 10, 1998 and failed to notify the judge handling the case, his client or opposing counsel he would not be able to appear. The hearing was required to be continued to a subsequent date.

¶ 31 Previous to the August 1998 hearing respondent appeared at the Tulsa County Courthouse in relation to another hearing in said case while under the influence of intoxicating liquor. This occurred in November 1997. Respondent also failed to return opposing counsel's telephone calls regarding attempts to settle the matter. Further, respondent failed to appear for his deposition in regard to the misconduct involved in count IV, even though he was properly subpoenaed for said deposition.

## PART II(E). SECOND AMENDED COMPLAINT—COUNT V.

¶ 32 The second amended complaint added count V. The allegations of this count are deemed admitted by respondent's failure to submit an answer or response to the second amended complaint. Further, respondent did not respond in writing to the grievance initiated against him in regard to count V, even though the record shows complainant served him with a copy of the grievance and

sought a response from him under Rule 5.2, RGDP.

¶ 33 Count V generally concerns respondent's representation of Earl Smith in relation to a garnishment proceeding. The most serious misconduct involved with this count is that respondent intentionally misappropriated funds belonging to Smith. Although the charges in count V are deemed admitted by respondent's failure to submit an answer or response, the evidence presented at the June 1999 trial panel hearing clearly and convincingly showed the following pertinent facts in any event.

¶ 34 In March 1997 Smith (as plaintiff) received a judgment against a tenant in the amount of $4,500.00 in a Tulsa County case. With post-judgment interest the amount owed to Smith in December 1997 was $4,808.81. Certain property of the tenant (or former tenant) was sold at auction. Funds in the auctioneer's hands were garnished for the amount of the judgment, plus the interest. On January 29, 1998 the auctioneer delivered to respondent, on Smith's behalf, a check in the amount of $4,808.81 made payable to respondent. Respondent negotiated the check on or about the same day.

¶ 35 Thereafter, on more than one occasion Smith requested respondent to pay him the proceeds Smith was due. Respondent told Smith, on more than one occasion in the spring of 1998, he would pay Smith the money due, including that he would pay Smith by May 15, 1998. These representations were false because respondent did not pay Smith and, in fact, as of the date of the June 1999 trial panel hearing, respondent had failed to pay any part of the $4,808.81 to Smith. Up to the present time, no submission in this case discloses that respondent has paid any portion of the $4,808.81 that Smith is due.

## PART III. DISCIPLINE.

¶ 36 In disciplinary proceedings this Court acts as a licensing court in the

---

16. In addition to other violations, count IV also charged violation of Rule 3.4(d), ORPC (failure to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party). Although the allegations of count IV are deemed admitted by respondent's failure to file a formal answer or response to the amended complaint, in its brief submitted to this Court complainant appears to concede no violation of Rule 3.4(d) was committed by respondent, or, at least, shown to have been committed by him, given the evidence presented at the trial panel hearing. See Complainant's Brief–In–Chief, July 19, 1999, pg. 24.

exercise of our exclusive original jurisdiction, not as a reviewing tribunal. *State ex rel. Oklahoma Bar Ass'n v. Downing*, 1990 OK 102, 804 P.2d 1120, 1122. It is our nondelegable, constitutional responsibility to decide the discipline warranted when an attorney is found to have engaged in professional misconduct. *Id.*; *State ex rel. Oklahoma Bar Ass'n v. Barnett*, 1997 OK 61, 940 P.2d 493, 495 (Court's duty in misconduct cases is to independently determine the proper discipline).

¶ 37 Our responsibility is not to punish the offending lawyer, but to assess his/her continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Meek*, 1994 OK 118, 895 P.2d 692, 699. In misconduct cases, we are required to exercise our responsibility with a view to safeguarding the interests of the public, the courts and the legal profession. *Id.* Also, to arrive at appropriate discipline, a fit factor to consider is the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 1989 OK 16, 770 P.2d 892, 899; *State ex rel. Oklahoma Bar Ass'n v. Hall*, 1977 OK 117, 567 P.2d 975, 978.

¶ 38 Other factors properly considered include comparing the circumstances in the matter at hand with previous disciplinary matters, and examining an attorney's past record of professional behavior. *Meek, supra*, 895 P.2d at 700. Mitigating circumstances are also often considered when assessing the appropriate measure of discipline. *State ex rel. Oklahoma Bar Ass'n v. Thomas*, 1995 OK 145, 911 P.2d 907, 913. Further, although discipline should be administered fairly (i.e. evenhandedly), this Court has recognized that the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. *See State ex rel. Oklahoma Bar Ass'n v. Rozin*, 1991 OK 132, 824 P.2d 1127, 1130.

¶ 39 We also note that, although in certain circumstances it may be appropriate for this Court to consider alcoholism or alcohol abuse as a mitigating factor in fashioning the suitable discipline in a Rule 6 proceeding, alcoholism is not in itself enough to mitigate discipline. *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, supra, 863 P.2d at 1130. For alcohol abuse or alcoholism to be weightily considered as a mitigating factor, the offending attorney must recognize his problem, and seek and cooperate in treatment. *Id.*; *State, ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543, 547–549. In other words, the mere fact that an attorney suffers from alcoholism may not be used as a shield from professional responsibility and where the facts warrant, discipline may be imposed. *State ex rel. Oklahoma Bar Ass'n v. Adams*, 1995 OK 17, 895 P.2d 701, 705. Here, our independent review convinces us respondent's problem(s) with alcohol should not be heavily considered as a mitigating factor. We also conclude that disbarment is the appropriate discipline for the misconduct shown by this record.

¶ 40 Based on our review of the record, we can conclude nothing else but that respondent is guilty of intentional misappropriation in the Smith matter. Respondent lied to Smith in the spring of 1998 when he told Smith he would pay the funds due. As the record shows, Smith was not paid and as of the June 1999 trial panel hearing Smith had not received the funds due him. We have been provided no information up to this date that Smith has been paid any of the $4,808.81 due.

¶ 41 As to the Herndon matter, even though respondent eventually paid Herndon the $1,500.00 that was owed, this was done, by respondent's own admission, only after a lengthy period of failure to remit the funds to Herndon, and only after a grievance had been initiated and the disciplinary investigation against respondent was under way. The conduct exhibited by respondent in the Smith and Herndon matters cannot be tolerated by this Court.

¶ 42 Our cases have articulated a continuum of culpability in evaluating the mishandling of client funds. *State ex rel. Oklahoma Bar Ass'n v. Dunlap*, 1994 OK 81, 880 P.2d 364, 366–367. Commingling occurs when a lawyer fails to keep client money, or

money accepted on the client's behalf, in a separate account from that of the attorney. *Id.* at 367; *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 1993 OK 91, 863 P.2d 1136, 1145. The next most serious offense occurs when an attorney uses a client's money for some purpose other than that for which it was intended. *Dunlap, supra,* 880 P.2d at 367; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, 867 P.2d 1279 (applying client payment intended for private investigator services to attorney's own fees); *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 1993 OK 127, 863 P.2d 1164 (applying funds intended for deposition expenses toward claimed attorney fees). The most egregious offense, misappropriation, occurs when the attorney purposely deprives a client of money by way of deceit and fraud, i.e. theft by conversion or otherwise, and intentionally inflicts grave economic harm on his/her client. *Johnston, supra,* 863 P.2d at 1145; *See also State ex rel. Oklahoma Bar Ass'n v. Raskin,* 1982 OK 39, 642 P.2d 262. An attorney found guilty of this latter offense, i.e. theft by conversion or intentional misappropriation, results in the attorney's disbarment. *Johnston, supra,* 863 P.2d at 1145; Rule 1.4(c), RGDP. The record is clear that in at least the Smith matter respondent is guilty of intentional/purposeful misappropriation.

¶ 43 In addition to the unprofessional conduct in dealing with client funds in the Smith and Herndon cases, the record shows client-communication lapses, missing court hearings, intoxication in court, and respondent's disregard for the law as shown by his repeated violation of Oklahoma's legal standards prohibiting driving a motor vehicle while intoxicated on alcohol.[17] The record also shows his failure to fully cooperate in the disciplinary investigation and that he has been the subject of previous disciplinary action. Very simply, the totality of the misconduct shown by this record will not countenance any discipline other than disbarment.

¶ 44 Accordingly, it is ORDERED by this Court that Respondent be DIS-BARRED AND HIS NAME STRICKEN FROM THE ROLL OF ATTORNEYS LICENSED TO PRACTICE LAW IN THIS STATE. Further, Respondent is ORDERED TO PAY THE COSTS OF THIS DISCIPLINARY PROCEEDING IN THE AMOUNT OF $1,911.81 WITHIN NINETY (90) DAYS FROM THE DATE THIS OPINION BECOMES FINAL.

¶ 45 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, OPALA, KAUGER, and WATT, JJ., concur.

¶ 46 BOUDREAU, J., not participating.

---

17. Although conviction for driving a motor vehicle while under the influence of intoxicating liquor does not facially show a lawyer's unfitness to practice law [*State ex rel. Oklahoma Bar Ass'n v. Armstrong,* 1990 OK 9, 791 P.2d 815] "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Rule 8.4, Comment, ORPC.