STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ELSEY
2023 OK 75
Case Number: SCBD-6553
Decided: 06/20/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 75, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JACKIE DALE ELSEY, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 A summary disciplinary proceeding resulting from Respondent's pleas of guilty and no contest to two felony charges for driving under the influence of alcohol and multiple misdemeanor charges resulted in the Court placing him on a deferred suspension of two years with certain probationary rules. After two years, the Oklahoma Bar Association filed a Notice to Court Regarding Respondent's Probation, contending that Elsey failed to cooperate or otherwise complete an alcohol test or urinalysis as requested by the Oklahoma Bar Association. This Court ordered an evidentiary hearing. The Trial Panel recommended this Court place Elsey on a deferred suspension for an additional six months, subject to certain conditions. We hold that Respondent completed the terms of his probation, and we dismiss his two-year deferred suspension.

RESPONDENT COMPLIED WITH THE TERMS OF PROBATION, AND
HIS DEFERRED SUSPENSION IS DISMISSED.

Katherine M. Ogden, Assistant General Counsel of the Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Vernon D. Ellis, Adair, Oklahoma, for Respondent.

Winchester, J.

¶1 This disciplinary proceeding arises from Respondent Jackie Dale Elsey's (Elsey) pleas of guilty and no contest to two felony charges for driving under the influence of alcohol and multiple misdemeanor charges. On September 18, 2017, this Court entered an Order of Immediate Interim Suspension. On December 17, 2019, this Court lifted Elsey's interim suspension and placed him on a deferred suspension of two years, subject to certain probationary rules. During the term of deferment, Elsey had to: (1) sign a contract with Lawyers Helping Lawyers (LHL) and waive all questions of confidentiality, permitting his sponsor at LHL to notify the Oklahoma Bar Association (OBA) in the event of any default; (2) be supervised by a designated member of the LHL committee for the duration of the probationary term; (3) submit to random drug screens or urinalysis to be determined by his sponsor with LHL; (4) participate in the Alcoholics Anonymous (AA) program or a similarly recognized program; (5) abide by the Oklahoma Rules of Professional Conduct (ORPC); and (6) refrain from the use or possession of intoxicants. The two-year probation began on the date of the Court's opinion. See State ex rel. Okla. Bar Ass'n v. Elsey (Elsey I), 2019 OK 81455 P.3d 903

¶2 Over two years after the Court's decision in Elsey I, the OBA filed a Notice to Court Regarding Respondent's Probation, contending that Elsey had failed to cooperate or otherwise complete an alcohol test or urinalysis as requested by the OBA. The Court ordered Elsey to show cause and respond to the OBA's Notice.

¶3 On June 24, 2022, Elsey responded that he had substantially complied with his probation requirements. He noted that COVID-19 made it difficult for him to strictly comply with the requirements. Elsey acknowledged his alcohol problem and contended he worked diligently to maintain sobriety. He also provided the Court with a copy of the negative alcohol test he obtained on January 5, 2022.

¶4 The Court assigned the matter to the Professional Responsibility Tribunal (Trial Panel) to hold an evidentiary hearing to determine whether Elsey had violated his probation, addressing at a minimum (1) the reports from Elsey's designated LHL committee member; (2) the OBA's communication with Elsey during his probation; (3) whether Elsey participated in random alcohol testing and the results; (4) whether Elsey participated in an AA program or a similarly recognized program; and (5) whether Elsey refrained from the use or possession of intoxicants.

¶5 The Trial Panel held a hearing and filed its report. The Trial Panel found that Elsey substantially complied with the Court's imposed conditions during his deferred suspension. The only incidents of "non-compliance" occurred in the last month of his two-year probation. The Trial Panel held that Elsey's efforts to obtain a timely drug test were "at best inadequate and at worst evasive and disingenuous." The Trial Panel concluded at least two deficiencies in the supervision process frustrated the intent of this Court: (1) the OBA did not ask Elsey to submit to an alcohol test until the last month of his conditional suspension nor did Elsey take any steps to initiate such testing, and (2) Elsey provided no evidence of his regular attendance at AA meetings except his self-reporting. The Trial Panel recommended that we place him on a deferred suspension for an additional six months subject to the following conditions: (1) Elsey to continue in the LHL program and LHL to appoint a new sponsor for Elsey who lives in close enough proximity to ensure frequent in-person meetings, (2) Elsey to continue to attend AA meetings as often as recommended by his local chapter and Elsey to provide written proof of attendance to the LHL sponsor and/or the OBA if requested, and (3) the OBA to facilitate a random and timely alcohol test at least twice per month administered by a facility chosen by the OBA and Elsey to provide the results to the OBA.

I. FINDINGS

¶6 In 2003, Elsey received his license to practice law in Oklahoma. He practiced law, in good standing, until his interim suspension in 2017. Elsey pled guilty or no contest to five alcohol-related driving offenses since his admission to the OBA. Elsey's history of alcohol-related offenses is outlined in Elsey I, 2019 OK 81

¶7 On December 17, 2019, this Court imposed a deferred suspension for two years, subject to compliance with the terms of probation, arising from certain alcohol-related offenses. Id. ¶ 22, 455 P.3d at 907. Elsey signed a contract with LHL, and LHL assigned Ben Rogers (Rogers) to supervise Elsey throughout his conditional suspension. During this time, Elsey lived in Vinita, Oklahoma, and Rogers lived in Norman, Oklahoma, an approximate three-hour drive apart. Due to the distance between them combined with the COVID-19 pandemic, it was nearly impossible for Rogers and Elsey to meet in person or attend AA meetings together. However, they attended weekly telephone meetings. At the beginning of Elsey's conditional suspension, they met via telephone three times a week. Rogers changed the frequency of the meeting to once a week after seeing significant compliance from Elsey.

¶8 Rogers submitted monthly reports to the OBA regarding Elsey, which were generally favorable. Rogers reported that Elsey cooperated, attended the telephone meetings, and self-reported that he attended AA meetings and LHL meetings. Once the COVID-19 pandemic began, Elsey attended AA meetings online, and he could not obtain written verification of his attendance. Rogers reported to the OBA that he did not suspect that Elsey used alcohol or other intoxicants during his supervision of Elsey. However, Rogers believed that LHL should have assigned an LHL member who lived near Vinita to supervise Elsey. Rogers even expressed this concern to the OBA during the first year of supervising Elsey. However, the OBA and LHL did not find a supervisor for Elsey who lived closer than Rogers.

¶9 In October 2021 (after Elsey completed 22 months of his conditional suspension), the OBA contacted Rogers to inquire into the status of administering an alcohol test to Elsey. Rogers could not complete this task because of the distance between them, and Rogers also felt that it would violate Elsey's trust in him. Over a month later, the OBA confirmed a location in Vinita to conduct the testing. The OBA had its first direct contact with Elsey during the last month of Elsey's conditional suspension. On December 2, 2021, at 8:30 a.m., an OBA investigator contacted Elsey to request that he obtain an alcohol test within 48 hours at a location designated by the OBA. Elsey contacted the testing center the next day to schedule an appointment, and the test administrator scheduled the appointment for 3:30 p.m. The test administrator relayed to Elsey that he would have to leave shortly after the scheduled appointment time to pick up a car for the Vinita Christmas parade. Elsey arrived for the test approximately 20 minutes late. Elsey then attempted to give a sample but was unable to do so. The test administrator left but stated he would be back in approximately 10 minutes. Elsey left and called Rogers to inquire about what he should do. Elsey was afraid of not obtaining the test in time because it was a Friday afternoon, and he did not believe any testing centers were open on the weekend. Rogers told Elsey to go to an urgent care facility to obtain a test. Elsey went to the "Crises Center," but it was closed. He then went to the emergency department at the local hospital. However, the hospital did not perform alcohol or drug screenings. Elsey abandoned his efforts at that time. On Monday, December 6, 2021, at 9:15 a.m., Elsey obtained a test from a local Veterans Affairs (VA) hospital. The results were negative for drugs. However, unbeknownst to Elsey, the test did not test for alcohol.

¶10 Elsey had no further contact with the OBA until January 5, 2022, at approximately 10:00 a.m. (after the expiration of his two-year probation), when the OBA investigator requested that Elsey obtain an additional alcohol test within 48 hours. On January 7, 2022, at 3:45 p.m., Elsey obtained a negative drug and alcohol test from the Drug Court of the 13th Judicial District. He sent the results to the OBA that day, and the OBA relayed to him that it would file a notice with this Court to advise that Elsey did not comply with the conditions of his probation.

II. STANDARD OF REVIEW

¶11 In disciplinary proceedings, this Court acts as a licensing court in the exercise of our exclusive jurisdiction. State ex rel. Okla. Bar Ass'n v. Garrett, 2005 OK 91127 P.3d 600de novo, and the Trial Panel's recommendations are neither binding nor persuasive. State ex rel. Okla. Bar Ass'n v. Anderson, 2005 OK 9109 P.3d 326

III. DISCUSSION

¶12 The Court's responsibility is not to punish an offending attorney but to assess his continued fitness to practice law. State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94991 P.2d 1015State ex rel. Okla. Bar Ass'n v. Benefield, 2005 OK 75125 P.3d 1191Doris, 1999 OK 94

¶13 The Trial Panel recommends that we place Elsey on an additional six-month probationary period with stricter conditions. In determining whether additional discipline is warranted, we must be mindful that the purpose of imposing conditions for a probationary period is to encourage a permanent change of lifestyle and allow the attorney to maintain his sobriety and rehabilitation, while also continuing his practice of law. Garrett, 2005 OK 91127 P.3d 600 compliance with the conditions of probation proves the depth of an attorney's commitment to abstaining from alcohol and sincerity in establishing a new lifestyle. State ex rel. Okla. Bar Ass'n v. McBride, 2007 OK 91175 P.3d 379

¶14 An order of this Court implementing additional discipline because of a violation of the associated deferred-suspension conditions must be based upon facts before this Court showing that the attorney actually violated the probation. State ex rel. Okla. Bar Ass'n v. Demopolos, 2015 OK 50352 P.3d 1210

¶15 The OBA's complaints center around Elsey failing to cooperate or otherwise complete an alcohol test as the OBA requested. The Court's condition for his suspension was that Elsey must submit to random drug screens or urinalysis to be determined by his sponsor with LHL. The Court understands why Rogers could not perform the tests himself. Rogers still gave guidance to the OBA, recommending Elsey take an alcohol test within 48 hours of the OBA giving Elsey notice. The OBA did not instruct Elsey to obtain an alcohol test until December 2, 2021, almost two years into his two-year deferred suspension, and then again on January 5, 2022, after his probation ended. When the OBA did so, Elsey attempted to obtain a test as requested by the OBA. In both instances, he took a test, but he took the test outside the requested time frame. Elsey obtained the first test over 48 hours late, and he obtained the second test approximately six hours late. Elsey never refused to obtain a test, and more importantly, Elsey never tested positive for any drugs or alcohol.

¶16 The Trial Panel criticizes Elsey for not taking any affirmative actions to ensure that he accomplished the testing during his conditional suspension. However, the purpose of submitting to tests determined by his sponsor was to determine whether Elsey was using any intoxicants. If Elsey had requested those tests, it would have hindered the purpose of the testing.

¶17 It is important to note that Elsey has been honest about his alcoholism and accepted responsibility for his actions after his arrest in 2017. Elsey completed a 28-day residential treatment program, completed an 8-week program at an addiction recovery center, and continued to have monthly appointments at the VA Behavioral Medicine Clinic for substance use disorder. In addition, Elsey had already served a two-year interim suspension by the time the Court decided Elsey I; this long interim suspension provided additional deterrence under the circumstances. He then completed a 2-year supervision with an LHL member and participated in AA and LHL. There is no evidence that Elsey used alcohol since this Court placed him on interim suspension in 2017, particularly during the time of the conditional suspension.

¶18 We also note that Elsey continued to practice law during his conditional suspension, and his alleged misconduct has not adversely affected any clients. Elsey had no new criminal charges filed against him during his conditional suspension nor were any grievances filed against him.

¶19 Considering the totality of Elsey's conduct since his last alcohol-related offense and the goals of discipline, we do not believe that the Trial Panel's recommendation to extend Elsey's conditional suspension is appropriate. This Court has now monitored Elsey's behavior for over five years. We do not take lightly Elsey's criminal history of driving a motor vehicle while intoxicated, which spans over two decades. We also admonish Elsey for his inadequate attempts in obtaining a timely alcohol test as requested by the OBA. But we recognize his efforts (especially during the COVID-19 pandemic) to bring his problems under control and reach his goal of sobriety. We have held that an attorney's continued sobriety is the key to his rehabilitation. State ex rel. Okla. Bar Ass'n v. Rogers, 2006 OK 54142 P.3d 428Id. If he does not do so and performs any future acts of misconduct, Elsey will face even harsher discipline from this Court

IV. CONCLUSION

¶20 Elsey substantially complied with the terms of his probation, and the record does not support the imposition of additional discipline for noncompliance. The OBA filed an application to assess the costs of the disciplinary proceedings in the amount of $2,278.70. Because no further discipline resulted from this matter, the OBA's application for costs is denied. See RGDP Rule 6.16.

RESPONDENT COMPLIED WITH THE TERMS OF PROBATION, AND
HIS DEFERRED SUSPENSION IS DISMISSED.

Rowe, V.C.J., Kauger, Winchester, Edmondson and Gurich, J.J., concur.

Kane, C.J., Combs (by separate writing), Darby (by separate writing), and Kuehn, J.J., dissent.

Kane, C.J., dissenting:

"I would follow the PRT recommendation and continue the deferred suspension for an additional six months, due to the Respondent's failure to timely provide requested alcohol screening."

 

 

COMBS, J., with whom DARBY and KUEHN, JJ., join, dissenting:

¶1 Nearly four years ago, a majority of this Court decided to "discipline" Respondent under Rule 7 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021, ch. 1, app. 1-A, for two felony DUI convictions from 2015 and 2017 by lifting his interim suspension--which had been in place for two years and three months--and deferring any further discipline for a period of two years, during which time Respondent would be subject to certain probationary rules. State ex rel. OBA v. Elsey, 2019 OK 81455 P.3d 903id. ¶¶ 1--2, 455 P.3d at 908 (Combs, J., dissenting)--particularly in light of his extensive struggle with alcoholism, see id. ¶¶6--9, 455 P.3d at 905 (majority op.) (detailing three other DUIs in 2008, 2009, and 2014 to which Respondent pleaded guilty; five other alcohol-related offenses in 1982, 1986, 1989, 1997, and 2000; and two additional self-reported DUI arrests while he was serving in the U.S. Navy). I further dissented due to the lack of clarity regarding what consequences Respondent would face should he fail to comply with his "deferred suspension." Id. ¶ 4, 455 P.3d at 908 (Combs, J., dissenting). Finally, I expressed my belief that appropriate discipline would entail suspension for two years and one day from the effective date of the opinion. Id. ¶ 5, 455 P.3d at 908 (Combs, J., dissenting).

¶ 2 Now we are told that Respondent failed to comply with the probationary rule requiring him to "submit to random drug screens or urinalysis." More specifically, Respondent was asked only twice to get tested for alcohol--both times during the last month of his supervision--and Respondent failed to comply with the OBA's instructions both times. The first time, Respondent showed up twenty minutes late despite knowing the test administrator had somewhere to go, claimed he was unable to produce the requested urine sample, and decided not to wait around ten minutes for the test administrator to return. Report of Proceedings Before PRT 4. He then told the OBA that car trouble prevented him from going to the test facility of their choosing, but later that day he managed to get a drug test--which did not cover alcohol testing and was thus deemed "useless" by the PRT--from a facility of his choosing. Id. at 5. The second time, Respondent lied when he claimed the OBA's desired test facility told him they could not administer an alcohol test, and then he again obtained his own alcohol test from a different facility a day later. Id. In all my experience as a Special Judge establishing the first Drug Court in the Twenty-third Judicial District, Respondent's shiftiness is a tell-tale sign of continued substance abuse--a conclusion shared by Respondent's Lawyers-Helping-Lawyers (LHL) sponsor, see id. at 3, 5 (discussing how "in the last month, December 2021," the LHL sponsor "became suspicious," "thought that Elsey was evasive and not forthcoming relating to the drug testing issues," and "suspected that Elsey . . . might very well be trying to avoid such a test" based on the sponsor's "own experience as an alcoholic and in many years as an AA participant and sponsor").

¶3 We are also told now that Respondent never met in person with his probation "supervisors," i.e., his LHL sponsor and the OBA investigators. Id. at 3--4. Furthermore, despite the probationary rule to "participate in the Alcoholics Anonymous program or [a] similarly recognized program," the PRT concluded that "there is no clear evidence of [Respondent's] regular attendance at AA meetings." Id. at 6. All of this goes to demonstrate why this Court has no business imposing probationary rules and deferred discipline when there is no real infrastructure for monitoring an attorney's compliance.

¶4 Based on the lack of both meaningful alcohol testing and AA attendance proof, the PRT recommends that Respondent be subjected to an additional 60 days of supervision with stricter probationary rules that would require alcohol testing at least twice per month and submission of AA attendance records. Id.; Majority Op. ¶ 13. Nevertheless, the majority of this Court chooses instead to find "there is no evidence that [Respondent] used alcohol" during his deferred suspension, to slap his wrist by "admonish[ing him] for his inadequate attempts in obtaining a timely alcohol test as requested by the OBA," and to dismiss his deferred suspension because "the record does not support the imposition of additional discipline." Majority Op. ¶¶ 17, 19--20.

¶5 I cannot join the majority's failure to impose discipline when there is no proof of Respondent's rehabilitation. I stand by my original dissent, which provided ample warnings about the perils of deferring final discipline and imposing probationary rules. Further supervision will be no more effective than the prior supervision we mandated or than the probation that Respondent violated in his criminal cases. Respondent's failure to comply with our probationary rules should result in discipline. I would still suspend Respondent for two years and one day.

 

 

DARBY, J., dissenting:

¶1 I joined Justice Combs in his dissent in this Court's prior decision concerning the potential discipline of Mr. Elsey. By today's pronouncement, the Court removes that potential for discipline, and Mr. Elsey once again has dodged receiving the consequences he deserves for harming the bar by continuing to drink and drive. For a second time, Justice Combs accurately explains why the first majority opinion was bad, and how today's decision is even worse.

¶2 Mr. Elsey's conduct reflects adversely on the legal profession in Oklahoma, to say the least.

¶3 I dissent, and join Justice Combs in his dissent.