125 P.3d 1191 (2005)
2005 OK 75
STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
Barry W. BENEFIELD, Respondent.
SCBD No. 4835.
Supreme Court of Oklahoma.
October 25, 2005.
Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.
Douglas L. Parr, Oklahoma City, OK, for Respondent.
*1192 TAYLOR, J.
¶ 1 The Oklahoma Bar Association (the OBA), filed a complaint against attorney Barry W. Benefield (Respondent). The OBA alleges that by his neglectful acts, Respondent violated rules 1.1,[1] 1.3,[2] 1.4,[3] 1.5(a),[4] 8.4(a), and 8.4(d)[5] of the Oklahoma Rules of Professional Conduct, 5 O.S.2001, ch. 1, app. 3-A (ORPC), and rule 1.3[6] of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001, ch. 1, app. 1-A (RGDP),[7] and that he should be disciplined.
¶ 2 The first issue before this Court is whether Respondent violated the ORPC's and the RGDP's rules governing attorneys' conduct. If so, the second issue is what discipline should be imposed on Respondent. We find that Respondent has violated the ORPC's and the RGDP's rules governing attorney conduct. Because Respondent's serial neglect, six counts from 1991 through the present, shows a pattern of misconduct, we determine Respondent should be suspended from the practice of law for one year. Further, Respondent shall pay the costs of these proceedings.

I. BACKGROUND FACTS
¶ 3 The record includes the parties' stipulations, a transcript of the hearing, and documentary evidence. The factual stipulations are not inconsistent with the record and are adopted by this Court. See State ex rel. Oklahoma Bar Ass'n v. Chapman, 2005 OK *1193 16, ¶¶ 11-12, 114 P.3d 414, 416. To the extent that the stipulated mitigation is inconsistent with the record or is irrelevant as discussed below, the stipulations are rejected. See id. The record shows the following facts.
¶ 4 Respondent was admitted to the practice of law in 1967. Respondent has been disciplined two times previously. Respondent was first disciplined in April of 1991 by the Professional Responsibility Commission (the Commission). The Commission privately reprimanded Respondent for neglecting a client matter. See RGDP R. 5.3(d). Respondent had been retained to locate the birth mother and acquire an original birth certificate for a client. He located the birth mother but failed to take steps to obtain the birth certificate. The OBA notified Respondent of the grievance and of the need to respond. After he did not respond in writing as required, see RGDP R. 5.2, his response was obtained by deposition pursuant to a subpoena.
¶ 5 In 2002, Respondent was again disciplined when this Court suspended him from the practice of law for sixty days. See State ex rel. Okla. Bar Ass'n v. Benefield, 2002 OK 37, 51 P.3d 1198 (Benefield I). In that proceeding, Respondent was disciplined for three counts of client neglect and one count of failing to respond to the OBA's request for information regarding the grievances. This Court found Respondent had been neglectful, rather than deliberate, but had a pattern of neglect. Id. at ¶ 15, 51 P.3d at 1201. Respondent was remorseful and had reimbursed the clients' fees.

II. CURRENT CHARGES
¶ 6 The first count in this proceeding involves Rowdy Baxter. The second count involves Jeffrey Hunter. The following facts are supported in the record and show Respondent violated the ORPC and the RGDP.

A. COUNT I
¶ 7 In October or November of 2002, Respondent agreed to represent Rowdy Baxter on a misdemeanor criminal charge. The case was assigned to the Honorable Russell Hall, Special Judge for Oklahoma County District Court. Had he been called as a witness, Baxter would have testified he paid Respondent $100.00 and later left $300.00 at Respondent's office with a woman claiming to be Respondent's girlfriend. Respondent contends he did not receive any payment from Baxter. Respondent recalls Baxter was to remove trash for him in exchange for $100.00 of the fee but Baxter never performed this service.
¶ 8 Respondent lost personal and telephone contact with Baxter. Although Respondent negotiated a plea agreement for Baxter, he never informed Baxter of the agreement. Based on his assertion that he could not contact Baxter by telephone, Respondent sought and obtained at least three continuances of Baxter's hearings. Baxter appeared for several hearings only to discover Respondent had continued his case. There is no evidence Respondent ever utilized the United States mail service to inform Baxter of the continuances, to inform him of the plea agreement, or to otherwise contact him.
¶ 9 On February 12, 2003, Respondent appeared at 8:45 a.m. in Cleveland County District Court on another matter. On the same day, Baxter appeared for his hearing which was set for 9:00 a.m. in Oklahoma County. Respondent did not appear. Respondent had not informed Judge Hall or Baxter of his scheduling conflict or of his potential lateness for the hearing. When Respondent got to Judge Hall's courtroom after 11:00 a.m., no one was there. Respondent assumed either Baxter had failed to appear or the case had been continued for at least a week. Respondent did not check the case's status before leaving the courthouse.
¶ 10 When Respondent failed to appear at the February 12th hearing, Judge Hall rescheduled it for the next day, February the 13th. On February 13, Baxter again appeared and Respondent did not. Judge Hall appointed a public defender to represent Baxter. On the advice of the public defender, Baxter entered a guilty plea. Judge Hall reported Respondent's failure to appear to the OBA's general counsel. He wrote: "Mr. Barry Benefield abandoned his client.... On *1194 the 8th time on my docket[,] I had the public defender do the plea." The OBA opened an investigation into the matter. Thereafter, Respondent wrote Judge Hall an apology and paid the cost of the public defender's services.

B. COUNT II
¶ 11 In February of 2003, Respondent was retained to represent Jeffrey Hunter in a felony case in Caddo County. Hunter's sister paid Respondent $300.00 to present her brother. Respondent agreed to negotiate for a better plea agreement than the ten years incarceration offered by the district attorney's office.
¶ 12 Respondent asserts that he contacted Assistant District Attorney Jason Glidewell about drug offender work camp which might have reduced Hunter's incarceration time. Mr. Glidewell does not remember this discussion.
¶ 13 Because of potential scheduling conflicts, Respondent asked Tony Burns, an attorney from Caddo County, to stand in for him at the hearing for entering a plea. Respondent informed Burns that he believed the terms of the plea agreement included a recommendation for drug offender work camp. Burns contacted the district attorney's office to confirm the agreement only to discover the work camp recommendation was not memorialized in the district attorney's file. If Burns had been called to testify, he would have stated he called Respondent's office and left a message that the Hunter case had not been concluded. Respondent contends he did not receive the message and assumed Hunter's case was concluded. Respondent admits he did not contact Burns or the court to confirm the status of the case.
¶ 14 Hunter's case remained set for jury trial for April 7, 2003. Because Respondent did not appear in court on April the 7th, and Hunter was unwilling to accept the district attorney's plea offer of ten years incarceration, the court continued the trial until April 10, 2003. When Respondent failed to appear on April 10, 2003, the court appointed a public defender to represent Hunter. The public defender negotiated a plea, and Hunter was sentenced to eight years incarceration.
¶ 15 The presiding judge, the Honorable David E. Powell, contacted the OBA's general counsel complaining Respondent had failed to appear for the jury trial. He included a copy of the transcript of the April 10 hearing at which Hunter entered his plea. This transcript was included in the record of these proceedings as an exhibit.

III. PROFESSIONAL RESPONSIBILITY TRIBUNAL REPORT
¶ 16 The Professional Responsibility Tribunal (PRT) found that the current misconduct "was not of the same nature as" the misconduct addressed in the previous disciplinary proceedings. Finding Respondent had violated the ORPC and the RGDP, the PRT concluded that an appropriate discipline would be six-month probation and that Respondent should pay the costs of the proceedings. Although the PRT recommended a six-month probation, it did not specify any terms of the probation or consequences for violating the probation. The PRT did recommend that the OBA's law office management division be directed to assist and monitor Respondent during the six-month probation. The onus of the recommendation was directed at the OBA rather than the Respondent.
¶ 17 The parties claim that the PRT recommended a public reprimand. In adopting this position, both parties rely on the presiding master's oral statement that Respondent should be publicly reprimanded. We cannot agree with this supposition. Rule 6.13 of the RGDP states that the PRT shall file a written report which includes a recommendation as to discipline. Since the PRT did not include a recommendation of public reprimand in its report, this Court can only conclude that the PRT reconsidered and eliminated this recommended discipline.

IV. DE NOVO CONSIDERATION OF PROCEEDINGS
¶ 18 In de novo consideration of bar disciplinary proceedings, this Court exercises its constitutional, nondelegable power to regulate *1195 the practice of law and legal practitioners. State ex rel. Okla. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 15, 880 P.2d 339, 344. This Court decides whether misconduct has occurred and, if so, the appropriate discipline to be imposed. State ex rel. Oklahoma Bar Association v. Todd, 1992 OK 81, ¶ 2, 833 P.2d 260, 261. Accordingly, this Court is not bound by the PRT's findings of fact, its view of the evidence, its view of the credibility of witnesses, or its recommendations of discipline. Id.

V. ANALYSIS

A. VIOLATIONS OF THE ORPC AND THE RGDP
¶ 19 The first issue before this Court is whether Respondent violated the ORPC's and the RGDP's ethical rules. Respondent admits he violated rules 1.1, 1.3, 1.4, 1.5, and 8.4(a) and (d) of the ORPC and rule 1.3 of the RGDP. The facts show Respondent violated the ORPC and the RGDP by his negligent representation of his clients. Exercising this Court's plenary authority, we find Respondent has violated the rules of the ORPC and RGDP and should be disciplined.

B. APPROPRIATE DISCIPLINE
¶ 20 Addressing the second issue, we must determine the appropriate discipline based on the current misconduct, the purposes of discipline, past misconduct and discipline, and the mitigating factors. Having considered the current misconduct, we turn to the other considerations.
¶ 21 The purposes of lawyer discipline are to protect the public, to protect the court, to preserve the integrity of the bar, and to deter misconduct by both the lawyer being disciplined and other members of the bar. State ex rel. Oklahoma Bar Ass'n v. Sheridan, 2003 OK 80, ¶ 46, 84 P.3d 710, 719; State ex rel. Oklahoma Bar Ass'n v. Busch, 1993 OK 72, ¶ 16, 853 P.2d 194, 196. In Bolton, this Court articulated the essence of these purposes. 1994 OK 53 at ¶ 21, 880 P.2d at 346. "Professional competence ... is a mandatory obligation imposed upon licensed practitioners.... It epitomizes professionalism. Anything less is a breach of a lawyer's duty to serve the client." Id.
¶ 22 The purposes of discipline are best served by examining Respondent's performance over time and inquiring into his professional history. Bolton, 1994 OK 53 at ¶ 18, 880 P.2d at 345. Our examination and inquiry shows that Respondent has a history of neglect.[8] In fashioning the appropriate sanction, we must not only consider the misconduct of this current proceeding but also consider Respondent's established pattern of neglect and any mitigating or enhancing factors. Id.
¶ 23 The parties stipulated that several factors mitigate the severity of the discipline. First, Respondent has been cooperative. Second, Respondent has acknowledged his misconduct and expressed remorse. Third, Respondent reimbursed the cost of the public defender's representation of Baxter. Fourth, Respondent apologized to Judge Hall. Fifth, no harm was caused to any client's case. Sixth, Respondent routinely represents clients who would not otherwise be able to afford an attorney and who do not have an address or telephone number.
¶ 24 We are unimpressed by the stipulated mitigation. Remorse comes easy after being "found out." Respondent was also remorseful when the charges were brought in Benefield I. This remorse did not result in Respondent changing his behavior to comply with ethical standards. In fact, the neglect in this proceeding began shortly after his suspension in Benefield I ended.
¶ 25 We cannot acquiesce in the mitigating factor that no client's case was harmed. While no harm to a case may have resulted, it is innate that a delay in the criminal process caused by an attorney's failure to appear in court could cause stress for a person faced with a possible loss of liberty or a delay in release from jail.
*1196 ¶ 26 Respondent focuses on his representation of indigent and low income clients. The PRT apparently took this into consideration. Competent representation of indigents is very important. However, negligent representation of indigent clients is of little value and can be worst than no representation at all. The standard for representation of indigent clients is no lower than for any other client. This claim of mitigation is without merit.
¶ 27 Respondent's routine representation of individuals who do not have an address or telephone number making communication difficult is not a mitigating factor in this case. The record does not show that Baxter did not have an address at the time Respondent was representing him or that Respondent attempted to contact Baxter by mail. Hunter was in jail in Anadarko while Respondent was representing him. Respondent had no excuse for any failure to communicate with Hunter. This generalized stipulation is not relevant to these proceedings.
¶ 28 We cannot agree with the PRT that Respondent's misconduct addressed in this proceeding is of a different nature than that for which he was previously disciplined even though his attitude may be different. Neglect is at the root of Respondent's misconduct, both here and previously. His responding to the charges in this case, unlike in Benefield I, does not change the nature of the underlying transgressions  neglect. Further, judges, rather than the clients, filing the grievance now before us does not distinguish Respondent's current misconduct from that of the past.
¶ 29 In his brief, Respondent adopts reasoning similar to the PRT's. He appears to argue his present transgressions are less egregious than those of the past and this should mitigate the discipline. This is a new and disingenuous argument for mitigation. We reject this as a mitigating factor.
¶ 30 Neglect of client matters is serious and erodes public confidence in the bar and the legal system. This Court represents that every person who holds a license to practice law is worthy of the public's confidence in carrying out professional duties. State ex rel. Okla. Bar. Ass'n v. Raskin, 1982 OK 39, ¶ 16, 642 P.2d 262, 267. When a lawyer no longer carries out professional duties in accordance with mandatory ethical rules, it is this Court's duty to impose discipline for the public's immediate protection. See id.
¶ 31 A history showing a pattern of neglect warrants substantial sanctions. See State ex rel. Okla. Bar Ass'n v. Spadafora, 1998 OK 28, 957 P.2d 114; State ex rel. Okla. Bar Ass'n v. Downing, 1990 OK 102, 804 P.2d 1120. When previous sanctions have failed to correct errant conduct, this Court, in carrying out its duty to protect the public, has no choice but to substantially increase the severity of the sanction. Anything less and the Court would be deserting its constitutionally-vested power as overseer of the legal profession.
¶ 32 As we stated in Benefield I, the discipline imposed for neglect has ranged from a public censure to two years. Benefield I, 2002 OK 37 at ¶ 14, 51 P.3d at 1200-1201. In State ex rel. Okla. Bar Ass'n v. Rennie, 1997 OK 108, 945 P.2d 494, the respondent attorney failed to diligently and competently represent his clients, failed to keep his clients reasonably informed, failed to respond to the bar about a grievance, and had been previously disciplined. The attorney appeared to be an honorable person, had admitted his mistakes, had taken steps to correct the problems that led to the misconduct, provided pro bono representation to clients, and filled a need by undertaking cases other lawyers avoided. This Court suspended the attorney from the practice of law for one year.
¶ 33 As in Rennie, a one-year suspension meets the goals of attorney discipline in the present proceeding. It is evident that a sixty-day suspension was insufficient to break Respondent's pattern of neglect. Because of his pattern of neglect, we suspend Respondent from the practice of law for one year. This discipline meets the goals of fostering public confidence in the legal system, protecting the public, and deterring Respondent and other members of the bar.

VII. COSTS
¶ 34 The OBA filed a motion to assess the costs of the proceedings against Respondent. *1197 See RGDP R. 6.16. The motion and attached documentation supports an award of $594.55 in costs. Respondent acknowledges responsibility for the costs of these proceedings and does not contest the amount. Therefore, the OBA's motion is granted.

VIII. CONCLUSION
¶ 35 Respondent has violated the rules of professional conduct mandated by the ORPC and the RGDP. Respondent stands suspended from the practice of law for one year from the date this opinion becomes final. He is ordered to pay $594.55 for the costs for these proceedings.
RESPONDENT SUSPENDED FOR ONE YEAR; ORDERED TO PAY COSTS.
¶ 36 WATT, C.J., LAVENDER, HARGRAVE, EDMONDSON, TAYLOR, JJ., concur.
¶ 37 WINCHESTER, V.C.J., ("I would suspend respondent for 6 months."), KAUGER, COLBERT, JJ., concur in part; dissent in part.
¶ 38 OPALA, J., not participating.
KAUGER, J. concurring in part, dissenting in part.
¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Barry W. Benefield, with two counts of professional misconduct regarding his representation, or rather lack of it, of two clients. The Bar Association alleged that the respondent's actions involved incompetent representation, lack of reasonable diligence, ineffective communication and consultation with clients, unreasonableness of fees, and conduct that was prejudicial to the administration of justice in violation of Rules 1.1, 1.3, 1.4, 1.5(a), and 8.4(a) and (d) of the Rules of Professional Conduct[1] and Rule 1.3 of the Rules Governing Disciplinary Proceedings.[2]
*1198 ¶ 2 Upon a de novo review,[3] I agree that there is clear and convincing evidence of the respondent's ethical violations. However, I disagree with the discipline imposed. The nature of respondent's misconduct, coupled with his prior disciplinary history and his cooperation with the Bar Association's investigation, warrants a suspension of ninety days, rather than one year as the majority recommends.
¶ 3 I also write separately to express my concern as to why the cause took nearly two years from the time a formal complaint was filed until the trial panel held a hearing and issued its report. Rule 6.6, of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001 Ch. 1, App. 1-A requires the selection of a trial panel within ten days after receiving notice of the complaint.[4] Rule 6.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A requires that a hearing shall not be less than thirty to sixty days from the date of the appointment of the trial panel, unless good cause is shown.[5]
¶ 4 There is nothing before the Court which explains the excessive delay in holding the hearing. It is unseemly to charge a lawyer with lack of reasonable diligence and conduct prejudicial to the administration of justice when it appears that the Bar Association is guilty of the same conduct. I would issue a show cause order to the Bar Association asking for an explanation for its unreasonable delay and an explanation of how the misconduct charges of lack of diligence[6] and conduct prejudicial to the administration of justice[7] comport with fairness and due process when the Bar Association appears guilty of such conduct.[8]

FACTS
¶ 5 On April 26, 1991, the respondent received a private reprimand from the professional responsibility commission admonishing him for conduct related to a client who, in an attempt to locate her birth mother, hired the respondent to secure an original birth certificate. The respondent promptly located the birth mother, but did not obtain the birth certificate until after the client filed a grievance, some ten months later. The respondent neglected to file a written response to the grievance. His response was obtained by deposition taken pursuant to a subpoena issued by the commission.
¶ 6 In May of 2002, the respondent was before the Court in a disciplinary matter involving three counts of misconduct concerning three clients for whom he had taken a retainer to represent, but never filed their cases. Respondent also faced an additional count because he was neglectful in responding to the investigation. After the professional *1199 tribunal hearing, the respondent fully reimbursed the clients. As a result of his conduct, we suspended the respondent from the practice of law for sixty days and ordered him to pay costs.
¶ 7 The Bar Association filed a complaint against the respondent on July 25, 2003, stemming from the representation, or lack thereof, of clients Rowdy Baxter (Baxter) and Jeffry Hunter (Hunter). In October or November of 2002, the respondent agreed to represent Baxter on a misdemeanor criminal charge of driving under the influence in Oklahoma County District Court. Baxter alleges that he paid the respondent $100.00 personally and that he left $300.00 at respondent's office with a "hippy looking woman." The respondent denies receiving the $300.00 and contends that, rather than receiving $100.00 from Baxter, he traded Baxter for services to remove trash from his office, which he never performed. The respondent stipulated to misconduct involving reasonable fees, but the evidence suggests that the respondent did not receive any money or services from Baxter.
¶ 8 Although the respondent negotiated a plea agreement for Baxter, he never communicated the proffered plea agreement to Baxter because he had lost all contact with him. Citing a lack of communication with Baxter, the respondent got the matter continued several times until February 12, 2003. However, respondent missed the February 12th hearing because of a scheduling conflict. He insists that he arrived late at the courthouse, but did not check the status of the case that day to see that the judge had delayed the matter until the next day. When the respondent was absent again the next day, the judge appointed a public defender to represent the client and filed a grievance with the bar against the respondent the next day for failure to provide legal services that he had agreed to provide. After learning of the investigation, the respondent wrote a letter of apology to the judge and made restitution to the public defender's office for their services.
¶ 9 In February of 2003, Jeffrey Hunter (Hunter) retained the services of respondent in a felony case in the District Court of Caddo County. Hunter's sister paid respondent $300.00 and respondent agreed to attempt to negotiate a better plea agreement than proffered the ten years of incarceration. According to respondent, he discussed the possibility of a recommendation for a drug offender work camp as part of the existing plea offer with the assistant district attorney.
¶ 10 Due to a scheduling conflict, respondent asked an Anadarko attorney to stand in for him and enter a plea. He advised the Anadarko attorney of the recommendation for a drug work camp, but when the attorney arrived the drug offender work camp offer was not memorialized in the prosecution's file. The Anadarko attorney telephoned respondent and left a message that the plea had not been concluded. Because no plea was accomplished, the case remained on the jury trial docket for April 7, 2003. Respondent denies getting the message, but admits that he never contacted the Anadarko attorney or the court to check on the case.
¶ 11 When the respondent failed to appear for the jury trial, the court continued the trial until April 10, 2003. When the respondent failed to appear again, the judge appointed a public defender to represent Hunter. The public defender negotiated a plea of eight years incarceration, which Hunter accepted. The judge filed a grievance against the respondent on April 14, 2003, for failing to appear at the jury trial.
¶ 12 After an investigation, the Bar Association filed a complaint against the respondent on July 25, 2003. Nearly two years later, a hearing was held on May 4, 2005. Except for a couple of requests for short extensions by the respondent, there is no showing in the record as to why it took nearly two years for the hearing to be held. At the hearing, the joint stipulations were admitted into evidence. The respondent stipulated as to misconduct on both counts and testified regarding his more than thirty years of experience in representing indigent or marginally indigent clients.
¶ 13 On July 20, 2005, the trial panel filed its report. It found a violation of Rules 1.1, 1.3, 1.4, 1.5(a), and 8.4(a) and (d) of the Rules *1200 of Professional Conduct[9] and Rule 1.3 of the Rules Governing Disciplinary Proceedings.[10] The panel unanimously recommended that the respondent be placed on six months probation with the Bar Association law office management division assisting the respondent in creating a docket system and ensuring that he follow the system. The panel also recommended that payment for the services be spread over the six month period and that respondent pay the costs of these proceedings.
¶ 14 THE RESPONDENT'S CONDUCT WARRANTS A NINETY DAY SUSPENSION AND THE IMPOSITION OF COSTS.
¶ 15 The Bar Association argues that, given the respondent's prior disciplinary history and considering the mitigating factors presented, the respondent should be disciplined, at most, by a three-month suspension from the practice of law. Respondent agrees with the Bar Association that a ninety-day suspension and the imposition of costs are warranted. The trial panel unanimously recommended a six-month probation with help from the Bar Association, but it did not recommend any suspension from the practice of law.
¶ 16 At the May 4, 2005, hearing, the trial panel explained the reasoning behind its unanimous recommendation. It recognized that: 1) the respondent fills a void left by other attorneys by representing indigent and marginally indigent people; 2) because of the clientele he represents, the respondent's income is also below the poverty level; 3) the respondent's clientele would be harmed if he were not allowed to practice law for a period of time; 4) maintaining contact with the respondent's clients is difficult due to their income level and propensity to move around; and 5) there was a big difference between the current complaints and previous complaints in that the respondent was very cooperative in this case. In fact, it was noted at the hearing that had the respondent not been so cooperative, the Bar Association would not have even been able to bring the first count of misconduct. When the Bar Association could not locate Baxter to provide information, the respondent did so.
¶ 17 With regard to the second count, the panel also noted that the respondent did not take money without providing services, he simply did not follow through with the services. The panel also recognized that the misconduct did not harm the clients in any way and that the complaints were initiated by concerned judges, rather than by complaining clients.
¶ 18 In disciplinary matters, this Court possesses exclusive original jurisdiction,[11] and the ultimate responsibility for imposition of professional discipline is ours alone. Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish, but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession. Discipline is imposed to maintain these goals rather than as punishment for the lawyer's misconduct.[12] The discipline recommended by the majority is punitive.
¶ 19 Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[13] Discipline is fashioned *1201 to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[14] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[15]
¶ 20 The respondent has brought discredit upon the legal profession, subjecting himself to discipline.[16] Discipline should be sufficient to persuade the attorney that such conduct will not be tolerated.[17] Mitigating circumstances may be considered in evaluating both the attorney's conduct and assessing the appropriate discipline.[18]
¶ 21 This Court is the ultimate arbiter of appropriate sanctions in bar discipline cases.[19] We may choose to reject or to accept the trial panel's recommendations.[20] Here, the trial panel did not suggest a suspension at all and the majority's one-year suspension is not only novel, but excessive given other one year suspensions this Court has previously imposed.[21]
*1202 ¶ 22 I share the concerns expressed by the trial panel when disciplining the respondent. Furthermore, it is unseemly to charge a lawyer with lack of reasonable diligence and conduct prejudicial to the administration of justice when it appears that the Bar Association is guilty of the same conduct.
¶ 23 I would issue a show cause order to the Bar Association asking for an explanation as to the unreasonable delay and an explanation of how the misconduct charges of lack of diligence[22] and conduct prejudicial to the administration of justice[23] comport with fairness and due process when the Bar Association appears to be dilatory in its handling of this complaint.[24] I would also find that the attorney's misconduct cases warrant a ninety day suspension and the payment of costs.

CONCLUSION
¶ 24 The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[25] Every lawyer is presented as a person worthy of competence and honesty in the performance of professional activities. It is our difficult duty to withdraw the license to practice law when necessary to protect the interest of the public, the legal profession and this tribunal.[26] Any other approach would rightly confuse or equate a lawyer's state franchise with a license to cheat the public.[27] Upon a de novo review of the record, I would: 1) issue a show cause order to the Bar Association asking for a reasonable explanation for the nearly two-year delay in bringing this cause before the trial panel; and 2) impose a ninety-day suspension on respondent and the payment of costs.
NOTES
[1] Rule 1.1 of the ORPC provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
[2] Rule 1.3 of the ORPC provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.
[3] Rule 1.4 of the ORPC provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
[4] Rule 1.5(a) of the ORPC provides:

A lawyer's fee shall be reasonable....
[5] Rule 8.4 of the ORPC provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
...
(d) engage in conduct that is prejudicial to the administration of justice[.]
[6] Rule 1.3 of the RGDP provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action....
[7] The original complaint alleged that Respondent had violated rules 1.16(d) and 8.1(a) and (d) of the ORPC. The OBA asked to amend the complaint to allege that Respondent had violated rule 8.4(a) and (d) instead and to strike rule 1.16(d) from the complaint. Respondent has not objected. The OBA's request to amend the complaint is granted.
[8] While not considered here for disciplinary purposes, it is illustrative of his behavior that Respondent, acting pro se, filed his answer in this proceeding one-week late after asking for and receiving an extension of time.
[1] Rule 1.1, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3-A provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."
Rule 1.3, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3-A provides:
"A lawyer shall act with reasonable diligence and promptness in representing a client."
Rule 1.4, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3-A provides:
"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
Rule 1.5(a), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A provides:
"A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent."
Rule 8.4, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3-A provides in pertinent part:
"It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
...
(d) engage in conduct that is prejudicial to the administration of justice...."
The initial complaint also alleged a violation of Rules 1.16(d) and 8.1 of the Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1 App. 3-A. At the May 4, 2005, hearing, the Bar noted that 8.1 was a typographical error and withdrew the allegations relating to the 1.16(d) violations.
[2] Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1-A, provides:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."
[3] State ex rel. Oklahoma Bar Ass'n v. Phillips, 2002 OK 86, ¶ 2, 60 P.3d 1030; State ex rel. Oklahoma Bar Ass'n v. Erickson, 2001 OK 66, ¶ 14, 29 P.3d 550; State ex rel. Oklahoma Bar Ass'n v. Israel, 2001 OK 42, ¶ 13, 25 P.3d 909; State ex rel. Oklahoma Bar Ass'n v. Smolen, 2000 OK 95, ¶ 7, 17 P.3d 456.
[4] Rule 6.6 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A provides in pertinent part:

"Within ten (10) days after receiving notice of the filing of a complaint, the Chief Master (or Vice-Chief Master if the Chief Master is absent or otherwise fails to act within such period) of the Professional Responsibility Tribunal shall select three members thereof to serve as a trial panel of Masters..."
[5] Rule 6.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A provides:

"The Chief Master or Vice-Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, which shall not be less than thirty (30) days nor more than sixty (60) days from the date of appointment of the Trial Panel. Extensions of this period may be granted by the Chief Master (Or the Vice-Chief Master, in case of the unavailability of the Chief Master) for good cause shown."
[6] Rule 1.3, Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 2, supra.
[7] Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 1, supra.
[8] Fundamentals of due process are applicable to lawyer disciplinary proceedings. State ex rel. Oklahoma Bar Ass'n v. Wolfe, 1997 OK 47, ¶ 20, n. 25, 937 P.2d 988; State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶ 15, 914 P.2d 644.
[9] Rule 1.1, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3-A see note 1, supra; Rule 1.3, Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A see note 1, supra; Rule 1.4, Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 1, supra; Rule 1.5(a), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 1, supra; Rule 8.4, Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A see note 1, supra.
[10] Rule 1.3, Rules Governing Disciplinary Proceedings, see note 2, supra.
[11] Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1-A; State ex rel. Oklahoma Bar Ass'n v. Holden, 1995 OK 25, ¶ 10, 895 P.2d 707; State ex rel. Oklahoma Bar Ass'n v. McMillian, 1989 OK 16, ¶ 5, 770 P.2d 892.
[12] State ex rel. Oklahoma Bar Ass'n v. Smith, 1980 OK 126, ¶ 21, 615 P.2d 1014; State ex rel. Oklahoma Bar Ass'n v. Lowe, 1982 OK 20, ¶ 19, 640 P.2d 1361.
[13] State ex rel. Oklahoma Bar Ass'n v. Cummings, 1993 OK 127, ¶ 19, 863 P.2d 1164; State ex rel. Oklahoma Bar Ass'n v. Hall, 1977 OK 117, ¶ 12, 567 P.2d 975.
[14] State ex rel. Oklahoma Bar Ass'n v. Patterson, 2001 OK 51, ¶ 29, 28 P.3d 551; State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶ 0, 914 P.2d 644; State ex rel. Oklahoma Bar Ass'n v. Bolton, 1994 OK 53, ¶ 16, 880 P.2d 339.
[15] State ex rel. Oklahoma Bar Ass'n v. Doris, 1999 OK 94, ¶ 38, 991 P.2d 1015; State ex rel. Oklahoma Bar Ass'n v. Rozin, 1991 OK 132, ¶ 10, 824 P.2d 1127.
[16] Rule 1.3, Rules Governing Disciplinary Proceedings, see note 2, supra.
[17] State ex rel. Oklahoma Bar Ass'n v. Miskovsky, 1997 OK 55, ¶ 15, 938 P.2d 744.
[18] State ex rel. Oklahoma Bar Ass'n v. Southern, 2000 OK 88, ¶ 35, 15 P.3d 1; State ex rel. Oklahoma Bar Ass'n v. Taylor, 2000 OK 35, ¶ 33, 4 P.3d 1242.
[19] State ex rel. Oklahoma Bar Ass'n v. Rennie, 1997 OK 108, ¶ 20, 945 P.2d 494; State ex rel. Oklahoma Bar Ass'n v. Butler, 1992 OK 150, ¶ 9, 848 P.2d 540.
[20] State ex rel. Oklahoma Bar Ass'n v. Rennie, see note 19, supra; State ex rel. Oklahoma Bar Ass'n v. Wilkins, 1995 OK 59, ¶ 12, 898 P.2d 147.
[21] State ex rel. Oklahoma Bar Ass'n v. Scroggs, 2003 OK 21, ¶ 61, 70 P.3d 821 [Attorney guilty of commingling client and attorney funds, failure to inform clients about status of case and failure to promptly return funds.]; State ex rel. Oklahoma Bar Ass'n v. Parsons, 2002 OK 72, ¶ 21, 57 P.3d 865 [Failure to disburse settlement check to client.]; State ex rel. Oklahoma Bar Ass'n v. Giger, 2001 OK 96, ¶ 25, 37 P.3d 856 [Attorney arrested six times for drug related vehicular crimes in three counties in over eighteen months, failure to competently represent clients, and refusal to respond to disciplinary proceedings.]; State ex rel. Oklahoma Bar Ass'n v. Stutsman, 1999 OK 62, ¶ 17, 990 P.2d 854 [Billed client on own letterhead for work done for law firm.]; State ex rel. Oklahoma Bar Ass'n v. Rennie, see note 19, supra at ¶ 23 [Failed to diligently represent, inform client, and respond to complaint after three previous disciplinary matters.]; State ex rel. Oklahoma Bar Ass'n v. Wilcox, 1997 OK 87, ¶ 29, 942 P.2d 205 [Commingled trust account funds.]; State ex rel. Oklahoma Bar Ass'n v. Eakin, see note 8, supra at ¶ 36 [Judge conducted ex parte communication with litigant.]; State ex rel. Oklahoma Bar Ass'n v. Bolton, see note 14, supra at ¶ 15 [Lied to police about knowledge of location of stolen property while negotiating for return of stolen property.]; State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra at ¶ 18 [Advised client to remove child from state in violation of court order.]; State ex rel. Oklahoma Bar Ass'n v. Watson, 1994 OK 32, ¶ 40, 897 P.2d 246 [Misrepresented details of settlement, charged excessive contingency fees, failed to obtain consent for settlement, failed to maintain accounts, and received compensation from non-client without disclosure.]; State ex rel. Oklahoma Bar Ass'n v. Farrant, 1994 OK 13, ¶ 17, 867 P.2d 1279 [Converted to client funds for purpose other than what attorney told client and previously disciplined two times.]; State ex rel. Oklahoma Bar Ass'n v. Cummings, see note 13, supra at ¶ 33 [Converted and commingled client funds after two prior disciplinary proceedings.]; State ex rel. Oklahoma Bar Ass'n v. English, 1993 OK 68, ¶ 68, 853 P.2d 173 [Secret purchase of creditor's claim by counsel for creditor's committee in bankruptcy case.]; State ex rel. Oklahoma Bar Ass'n v. Lacoste, 1991 OK 51, ¶ 8, 813 P.2d 501 [Represented to party that he was paying for documents with a check that he had already stopped payment on.]; State ex rel. Oklahoma Bar Ass'n v. Gasaway, 1991 OK 33, 810 P.2d 826 [Commingled and converted client funds and failed to fully respond to bar complaint.]; State ex rel. Oklahoma Bar Ass'n v. Hall, 1989 OK 119, ¶ 41, 781 P.2d 821 [Unprepared for trial, filed incorrect merger vote and filed false statement about possession of a stock certificate.]; State ex rel. Oklahoma Bar Ass'n v. Bell, 1981 OK 157, ¶ 7, 637 P.2d 1258 [Allowed default judgment by being late for trial, did not attempt to vacate default judgment, misrepresented to client reason for default and abandoned client and ceased communication.]; State ex rel. Oklahoma Bar Ass'n v. Peveto, 1980 OK 182, ¶ 21, 620 P.2d 392 [Neglected client's case and made misrepresentations to client and court.].
[22] Rule 1.3, Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 1, supra.
[23] Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 1, supra.
[24] State ex rel. Oklahoma Bar Ass'n v. Wolfe, see note 8, supra; State ex rel. Oklahoma Bar Ass'n v. Eakin, see note 8, supra.
[25] State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra; State ex rel. Oklahoma Bar Ass'n v. Farrant, see note 21, supra; Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, ¶ 4, 624 P.2d 1049.
[26] State ex rel. Oklahoma Bar Ass'n v. Raskin, 1982 OK 39, at ¶ 22, 642 P.2d 262.
[27] State ex rel. Oklahoma Bar Ass'n v. Miskovsky, see note 27 supra.