OSCN Found Document:STATE OF OKLAHOMA ex rel. OBA v. REEVES

 

 
 STATE OF OKLAHOMA ex rel. OBA v. REEVES2026 OK 37Decided: 05/27/2026SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 37, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

State of Oklahoma, ex rel., Oklahoma Bar Association, Complainant,
v.
Matthew Brett Reeves, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Pursuant to Rule 7.7 of the Oklahoma Rules of Disciplinary Proceedings, 5 O.S.2011, ch. 1, app. 1-A, Complainant, Oklahoma Bar Association, caused documentation to be transmitted to the Chief Justice of this Court following public reprimand and public censure in the states of Texas, Tennessee, and Alabama based on a sanctions order in the United States District Court for the Northern District of Alabama for using generative artificial intelligence to fabricate citations in two motions.

RESPONDENT PUBLICLY REPRIMANDED.

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Matthew B. Reeves, Respondent, Pro Se.

Darby, J.:

I. BACKGROUND

¶1 Pursuant to Rule 7.7 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021, ch. 1, app. 1-A, Complainant, Oklahoma Bar Association (OBA) caused documentation in this attorney disciplinary proceeding to be transmitted to the Chief Justice of this Court on December 2, 2025, following the public reprimand of Respondent, Matthew Brett Reeves, in Texas, on November 4, 2025, based upon similar discipline imposed in the United States District Court for the Northern District of Alabama. On January 14, 2026, the OBA filed notice of additional disciplinary action in another jurisdiction following the public censure of Respondent in Tennessee on December 15, 2025, for the same underlying actions. On March 26, 2026, the OBA filed a second notice of additional disciplinary action in another jurisdiction following the public reprimand of Respondent in Alabama on March 6, 2026, for the same underlying actions. Respondent was admitted to the practice of law in Oklahoma, on September 30, 2003, and is currently in good standing.

¶2 The sanctions order from the United States District Court for the Northern District of Alabama described the facts behind the public reprimand and why the court felt it was imperative to address it so strongly. On behalf of his client, the Alabama Department of Corrections and its officials in various capacities, on May 7, 2025, Respondent filed a motion for leave to take the deposition of an incarcerated person. On May 12, 2025, Respondent filed a motion to compel. The next day the plaintiff in the case filed a response objecting on several grounds, including that Respondent "appeared to have fabricated citations to legal authority in his motion for leave and motion to compel 'possibly through the use of generative artificial intelligence.'" Sanctions Ord. 4; App'x to Response to Ord. to Show Cause and Br.in Response, attach. A.

¶3 The United States District Court for the Northern District of Alabama Southern Division explained that there were five problematic citations across the two motions:

 

[Respondent] cited "Williams v. Asplundh Tree Expert Co., No. 3:05-cv-479, 2006 WL 3343787, at *4 (M.D. Fla. Nov. 17, 2006)" to support the statement that, "General objections are not useful and will not be considered by the Court. Objections should be specific and supported by a detailed explanation." Doc. 182 at 13. Though a case with that style exists, no case with that combination of style and proposition exists. See Williams v. Asplundh Tree Expert Co., No. 3:05-cv-00479-VMC-MCR (M.D. Fla. July 23, 2013); see also Doc. 186 at 4.

 [Respondent] cited "United States v. Baker, 539 F.App'x 937, 943 (11th Cir 2013)" as "confirming broad discovery rights under Rules 26 and 30." Doc. 174 at 2. As Plaintiff Johnson pointed out, "[w]hile United States v. Baker, 529 Fed. Appx. 987 (11th Cir. 2013) is an actual case, it is an appeal challenging a criminal's sentencing enhancement." Doc. 186 at 2. And the case found in the Federal Appendix numbers cited by [Respondent do] not discuss discovery. See Williams v. Morahan, 539 F. App'x 937 (11th Cir. 2013).
 [Respondent] cited "Kelley v. City of Birmingham, 2021 WL 1118031, *2 (N.D. Ala. Mar. 24, 2021)" for the proposition that the district court "refus[ed] to delay deposition based on unrelated discovery issues." Doc. 174 at 2. The only case with that style which Plaintiff Johnson (and the court) could find was an Alabama Court of Appeals case from 1939 that dealt with a traffic offense. Doc. 186 at 3; see Kelley v. City of Birmingham, 28 Ala. App. 644, 189 So. 921 (Ala. Ct. App. 1939).
 [Respondent] cited "Greer v. Warden, FCC Coleman I, 2020 WL 3060362, at *2 (M.D. Fla. June 9, 2020)" as "rejecting inmate's request to delay deposition until additional discovery was completed." Doc. 174 at 2. This case does not exist, nor does a case exist with similar citation for that proposition of law. See Doc. 186 at 3.
 [Respondent] cited "Wilson v. Jackson, 2006 WL 8438651, at *2 (N.D. Ala. Feb. 27, 2006)" with the parenthetical that it was an opinion "granting [a] Rule 30(a)(2)(B) motion and finding no good cause to delay deposition of incarcerated plaintiff." Doc. 174 at 2. There is no such case, and that Westlaw number directs to a maritime personal injury case that does not discuss discovery. See Douglas v. Ingram Barge Co., No. CV 3:04-0383, 2006 WL 8438651 (S.D.W. Va. Sept. 15, 2006); see also Doc. 186 at 4.

Sanctions Ord. 4--5, Johnson v. Dunn, Case No. 2:21-cv-1701-AMM (N.D. Ala. S. Div.) (Jul. 23, 2025) (emphasis original).

¶4 Respondent admitted in his response to the order to show cause from the federal court that the citations were hallucinated by ChatGPT. "In simpler terms, the citations were completely made up." Sanctions Ord. 1. The federal court found that the hallucinated citations in the two motions were false statements of law. Sanctions Ord. 25. The court stated

[i]n the light of repeated general warnings from federal courts about the risks of bogus citations generated by AI, as well as the persistent specific warning, policies, and expectations of his colleagues and law firm with respect to AI, [Respondent's] misconduct was particularly egregious. Having been so extensively alerted of the risk that AI will make things up, and having blown through all of his firm's internal controls design to protect court filing from counterfeit citations, [Respondent's] repeated decision to parrot citations generated by AI without verifying even one of them reflects complete and utter disregard for his professional duty of candor. This is recklessness in the extreme, and it is tantamount to bad faith.

Sanctions Ord. 37-38. The federal court recognized, as part of its authority for sanctions, the Alabama Rules of Professional Conduct, Rule 3.3 provides that "[a] lawyer shall not knowingly . . . [m]ake a false statement of material fact or law to a tribunal." Sanctions Ord. 28. The court noted it was unclear whether Rule 3.3 applied there because the rule states it applies to "knowing misstatements of law" and the false statements in the case occurred because of failure to verify the hallucinated citations. Id., at 31. Further, the Alabama Supreme Court had "not yet had the opportunity to consider whether Rule 3.3 applies to this specific kind of misconduct." Sanctions Ord. 31. The court found appropriate sanctions were public reprimand, paired with a publication requirement, disqualification in the case, and referral to state licensing authorities. Id., at 50.

¶5 On November 4, 2025, the Board of Disciplinary Appeals appointed by the Supreme Court of Texas issued an Agreed Judgment of Public Reprimand against Respondent. The Texas board laid out the misconduct before the federal court and found reciprocal discipline in the form of a public reprimand to be proper. No specific rule violations were stated.

¶6 On December 15, 2025, the Board of Professional Responsibility of the Supreme Court of Tennessee issued a public censure against Respondent. The Tennessee censure found that Respondent "failed to act with diligence and caused a delay in his client's case. In addition, [Respondent's] conduct was prejudicial to the administration of justice." Tennessee censured Respondent for violating Tennessee Rules of Professional Conduct 1.3 (diligence), 3.2 (expediting litigation), and 8.4 (misconduct).

¶7 On March 6, 2026, the Disciplinary Commission of the Alabama State Bar publicly reprimanded Respondent. The Alabama Commission concluded that Respondent violated Rule 1.1. (Competence), 3.3 (Candor Toward the Tribunal), and 8.4(d) and (g) (Misconduct-prejudice to administration of justice and adversely reflects on fitness to practice law) with his actions in federal court. The Alabama Bar also taxed all costs against Respondent.

¶8 On December 3, 2025, and April 3, 2026, we ordered Respondent to show cause why we should not impose a final order of discipline and allowed him to explain his conduct or attempt to mitigate any discipline we might impose. Respondent admitted that he reviewed and revised two filings which were originally drafted by another attorney in his office, a Motion for Leave to Depose Incarcerated Persons and Opposed Motion to Compel. Respondent stated that during his review of both documents, he noted that there were correct propositions of law that were unsupported or had only one citation included. Respondent admitted he used the generative artificial intelligence (AI) known as ChatGPT to obtain five citations which he added to those two documents. Respondent explained that in his prior usage of ChatGPT

¶9 Respondent received a sanctions order in the United States District Court for the Northern District of Alabama in Frankie Johnson v. Jefferson Dunn, et al., Case No. 2:21-cv-1701-AMM on July 23, 2025, for failing to verify the five citations he obtained through ChatGPT and included in two filed documents. Respondent self-reported the sanctions order to all states he was admitted to practice law in on July 25, 2025. In Texas, Respondent agreed to the public reprimand, thereby foregoing a hearing. The Texas Board of Disciplinary Appeals issued an agreed reciprocal discipline action based on the sanctions from Alabama, not any separate action or misbehavior. Respondent does not contest this Court's consideration of the Texas reprimand for reciprocal discipline.

¶10 Respondent disputes that the Tennessee censure lacks an adequate or reasonable legal or evidentiary basis to demonstrate that he violated Tennessee Rules of Professional Conduct 1.3, 3.2, or 8.4. Supp. Resp. to Ord. to Show Cause 3. Respondent argues that contrary to Oklahoma RGDP 7.7, the Tennessee censure does not supply a factual or analytical basis sufficient to presume the validity of the finding and conclusions in the censure or to support reciprocal or additional discipline. According to the OBA, Respondent did not contest the imposition of public censure in Tennessee and did not appeal the decision of the board.

¶11 Respondent disputes the Alabama State Bar's public reprimand for this same act, which they found to be in violation of Alabama Rules 1.1 (Competence), 3.3 (Candor Toward the Tribunal), and 8.4(d) and (g) (Misconduct). Respondent asserts that nothing in the reprimand demonstrates Respondent's lack of legal knowledge or incompetence in filing the two motions. Respondent claims that the motions did not alter the procedural posture of the case, delay its resolution, or prejudice any party. He further asserts that he did not attempt or intend to engage in conduct prejudicial to the administration of justice. Respondent stated that he did not have actual knowledge of any hallucinated citations in the motions before filing them. Second Supp. Response to Ord. to Show Cause 3. Respondent maintains that nothing in the Alabama reprimand reflects clear and convincing evidence of any rule violation. The OBA noted that in Alabama, an attorney may accept the reprimand, request a reconsideration, or refuse and demand formal charges by filed and a hearing held. Complainant's Response to Respondent's Second Supp. Response to Ord. to Show Cause, filed May 5, 2026. The OBA noted that the Alabama Disciplinary Commission properly notified Respondent and he "did not contest the issuance of the reprimand, challenge the rule violations, nor request formal charges be filed. Id., at 3.

¶12 The OBA states Respondent violated ORPC 1.3, 

II. STANDARD OF REVIEW

¶13 This Court is vested with exclusive, original, and nondelegable jurisdiction over attorney-discipline cases. State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96339 P.3d 895State ex rel. Okla. Bar Ass'n v. Cox, 2011 OK 73257 P.3d 1005State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 5671 P.3d 18Cox).

¶14 The sanctions order issued by the United States District Court for the Northern District of Alabama, the Agreed Judgment of Public Reprimand issued by the Board of Disciplinary Appeals for the Supreme Court of Texas, the Public Censure issued by the Board of Professional Responsibility of the Supreme Court of Tennessee, and the Public Reprimand issued by the Disciplinary Commission of the Alabama State Bar constitute the charges against Respondent and are prima facie evidence that Respondent committed the acts described therein. RGDP 7.7(c); State ex rel. Okla. Bar Ass'n v. Henderson, 1999 OK 29977 P.2d 1096 Henderson, 1999 OK 29

¶15 Respondent attached a copy of the federal sanction he received, the two motions he filed in federal court with false citations which led to his discipline, his response to the federal court, his firm and co-counsel's response to the federal court, and the transcript from the federal show-cause hearing. Respondent did not submit any transcripts or other evidence from the other three jurisdictions' reciprocal discipline proceedings. Respondent also waived his right to a hearing in Oklahoma.

III. ANALYSIS

¶16 There is nothing inherently problematic with the use of generative artificial intelligence in preparing legal materials, so long as attorneys abide by their duty to protect client confidentiality and recall their sacred duty to verify the pleadings they sign. The careless use of generative artificial intelligence to "save time" by not independently confirming citations is instead a waste of judicial resources and opposing party's time and money. It also damages the integrity and credibility of the legal system. Human diligence and review is required to ensure content and accuracy of filed documents. Signing pleadings that contain citations from generative AI that have not been verified shows a reckless disregard for the truth and an indifference to accuracy.

¶17 Respondent's claim that the Tennessee public censure and Alabama public reprimand do not supply a factual or analytical basis sufficient to presume the validity of the findings and conclusions in those proceedings or to support reciprocal discipline are mischaracterizations of Oklahoma RGDP 7.7 and our case law. RGDP 7.7(c) states: "Certified copies of the documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described." Because the discipline from the other jurisdictions is considered prima facie evidence that Respondent committed the acts described, it is Respondent's burden to show that he did not. RGDP 7.7(b) states:

When a lawyer is the subject of a final adjudication in a disciplinary proceeding, except contempt proceedings, in any other jurisdiction, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5) days of receiving such documents. The Chief Justice shall direct the lawyer to show cause in writing why a final order of discipline should not be made. A written response from the lawyer shall be verified and expressly state whether a hearing is desired. The lawyer may in the interest of explaining his or her conduct, or by way of mitigating the discipline to be imposed upon him or her, submit a brief and/or any evidence tending to mitigate the severity of discipline. The lawyer may submit a certified copy of any transcripts of the evidence taken during disciplinary proceedings in the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline.

Respondent chose to not file any evidence to mitigate or support his claim of insufficient evidence. The lack of lengthy descriptions in the public reprimand and public censure are not proof that the conclusions are inaccurate; the federal sanctions order they both reference sets out the harms to other parties that occurred because of this misconduct. See Sanction Ord. 24. Further, "Respondent may not deny the effect of his decision not to contest the charges made against him in [other jurisdictions] by arguing now that there has been no evidentiary hearing."
State ex rel. Okla. Bar Ass'n v. Bransgrove, 1998 OK 93976 P.2d 540

¶18 The record shows that the federal judge found Respondent showed "complete and utter disregard for his professional duty of candor." Sanctions Ord. 38. Respondent argues that his misconduct was not a violation of ORPC 3.3knowingly misrepresent facts or law in the filed motions. In Krug, we clarified that under ORPC 3.3, "a person's knowledge may be inferred from circumstances." State ex rel. Okla. Bar Ass'n v. Krug, 2004 OK 2892 P.3d 67see also ORPC, 5 O.S.2025, ch. 1, App. 3-A, Rule 1.0(f) (defining "knowingly" as denoting "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."). This would be such a case.

¶19 Respondent's firm had a policy under which "the use of ChatGPT for legal research require[d] written approval from a practice group leader." Sanctions Ord. 16 (quoting firm partner's declaration). The partner (and practice leader) that was involved in this case for Respondent's firm stated in his declaration that "our firm has made the limitations upon the use of artificial intelligence abundantly clear to all of our attorneys." Sanctions Ord. 16--17. The firm introduced evidence that in June 2023, "all [firm] attorneys received an email 'stating that "there are significant risks that LLM [Large Language Model] output can appear perfectly researched and logical while in fact it is wholly inaccurate." That same email implemented a policy which requires "written permission from the appropriate Practice Group Leader to use this new technology as a secondary research tool, with full checks of the accuracy of any results through traditional legal research methods." Respondent did not seek or gain that permission. Nor did he perform any checks on the accuracy of his results. "Similarly, when [firm] provided its attorneys access to Westlaw's CoCounsel platform in January 2025, it 'adopted and distributed a policy' that '[a]ll outputs must be reviewed and verified by the responsible attorney before being presented to clients, filed with courts, or otherwise relied upon.'" Sanctions Ord. 20--21. When asked about his knowledge of the firm policies, Respondent testified before the federal court

I was aware of the limitations on use; and in this instance, these two instances, I did not comply for the policy. And for that, I am apologetic. There was no excuse for it. There's no way to justify it. I can explain, but that doesn't help the process.

App'x to Response to Ord. to Show Cause, Attach. H; Tr. of Show Cause Hearing 23:1--9, May 21, 2025 (N.D. Ala. S. Div.).

¶20 In light of this information, Respondent's assertion that he did not have knowledge of the false citations after using AI to generate citations and not verifying them is hard to comprehend. Respondent was the only attorney in the case who used AI to find citations. Respondent was the only attorney in the case who knew that he used AI. And most importantly, Respondent knew that he did not verify the citations that he added.

¶21 Respondent knew that his firm had a policy against using AI because AI can be inaccurate while appearing otherwise. And Respondent ignored his firm's policy that if an attorney did use AI, they should fully check the results through traditional research methods. Comment 2 to the Oklahoma Rules of Professional Conduct, Rule 3.3 states that an "Advocate is responsible for pleadings and other documents prepared for litigation." Respondent presented multiple filings to the federal court knowing that he had not verified that the claims within them were supported by correct case law. A lawyer's duty to not knowingly make a false statement of fact or law to a tribunal goes beyond turning a blind eye to the possibility of the content of his pleadings being false. Instead, a lawyer has a duty to verify and ensure the accuracy of the pleadings his name is on. "All persons filing documents in Oklahoma courts are responsible for the content and accuracy of the documents." See In re: Generative Artificial Intelligence, SCAD-2026-17. If a lawyer knowingly uses AI to generate citations or analysis for a pleading and knowingly does not verify the accuracy before including it in the pleading, then the lawyer has knowingly made a false statement.

IV. APPROPRIATE DISCIPLINE

¶22 This Court may impose reciprocal discipline whenever discipline for lawyer misconduct has been imposed in another jurisdiction. State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551State ex rel. Okla. Bar Ass'n v. Kleinsmith, 2013 OK 16297 P.3d 1248State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551State ex rel. Okla. Bar Ass'n v. Kleinsmith, 2013 OK 16297 P.3d 1248Id.; see also State ex rel. Okla. Bar Ass'n v. Benefield, 2005 OK 75125 P.3d 1191

appropriate and reasonable sanction must (1) have sufficient deterrent force to make this misuse of AI unprofitable for lawyers and litigants, (2) correspond to the extreme dereliction of professional responsibility that sham citations reflect (whether generated by artificial or human intelligence), and (3) effectively communicate that made up authorities have no place in a court of law.

Sanction Ord. 2. We agree.

¶23 Respondent argues that several mitigating factors apply before this Court. Respondent has never been disciplined in over twenty years of practice, Respondent self-reported the initial problem to the Alabama bar's General Counsel, self-reported the sanctions and other state's reprimands and censures to the OBA and made a full-and-free disclosure, cooperating fully. Respondent also asserts that he did not rely on unverified citations from ChatGPT for dishonest or selfish motives to obtain a positive outcome for himself or his client. Respondent made a timely, good-faith effort to rectify the consequences of his misconduct. Finally, Respondent is now working to educate law students about the potential dangers of AI use in the legal profession. Respondent expressed remorse and admitted that his conduct arose from "careless reliance on AI-generated content during an extremely compressed timeframe, without any intent to mislead the district court or opposing counsel." Resp. to Order to Show Cause 14.

¶24 The misconduct for which Respondent was censured or reprimanded in Texas, Tennessee, Alabama, and Alabama federal court--presenting false citations, obtained through use of generative AI--constitutes violations of ORPC 1.3, 3.2, 3.3, 8.4(d), and RGDP 1.3. A public reprimand is warranted in Oklahoma for the actions which form the basis of Respondent's public reprimands in Tennessee, Alabama and Texas and in the United States District Court for the Northern District of Alabama Southern Division.

RESPONDENT PUBLICLY REPRIMANDED.

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Combs, Gurich (by separate writing), Darby, Kane, and Jett, JJ., concur

FOOTNOTES

Id., at 22:12--22:25. Respondent testified that he primarily used Westlaw's CoCounsel product professionally. See id., at 22:11--12.

Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021, ch. 1, app. 1-A, Rule 1.3.

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2021, ch. 1, app. 3-A, Rule 3.3(a)(1), Candor Toward the Tribunal.

GURICH, J., with whom COMBS, J., joins concurring:

I concur in the discipline imposed in this matter. The unverified use of generative artificial intelligence resulting in reliance upon false authority is reprehensible and clearly violates numerous ethical rules. I write separately to emphasis that lawyers have an ethical and professional duty to verify each citation submitted to the court in support of any pleading, motion, or brief. I want to remind attorneys of their oath:

You do solemnly swear that you will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma; that you will do no falsehood or consent that any be done in court, and if you know of any you will give knowledge thereof to the judges of the court, or some one of them, that it may be reformed; you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God.

5 O.S. § 212 O.S. § 2011